McLAIN JONES *et al.*, Appellants, v. W. T. ZINK, Respondent.

St. Louis Court of Appeals, February 25, 1896.

1. **Eminent Domain**: RECITAL OF JURISDICTIONAL FACTS. In proceedings of eminent domain every jurisdictional fact must affirmatively appear upon the face of the record. Nothing will be supplied by intendment or implication.

2. ——— : ——— : PUBLIC ROADS: REPORT OF ROAD COMMISSIONER. Accordingly, in a proceeding for the opening of a public road, the report of the road commissioner must affirmatively show the refusal of nonconsenting owners to relinquish the right of way through their lands; and a recital, that they failed to make the relinquishment, will not suffice for this purpose.

3. ——— : ——— : ——— : QUALIFICATIONS OF COMMISSIONERS: ASCERTAINMENT OF PROBABLE DAMAGES OF NONCONSENTING OWNERS BY COUNTY COURT. And, under this rule, the judgment of condemnation in such a proceeding will be void, when the record fails to show that the commissioners possessed the qualifications prescribed by statute; also, when the record fails to show that the county court ascertained the probable damages to nonconsenting owners at the outset, as the statute requires.

*Appeal from the Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

REVERSED AND REMANDED *(with directions).*

*Gideon & Gideon, T. J. Delaney, Chas. H. Anderson,* and *McLain Jones* for appellants.

No brief filed for respondent.

BIGGS, J.—The plaintiffs are the owners of a tract of land in the city of Springfield, and in this action they seek to restrain the defendant from entering upon their premises for the alleged purpose of establishing a public road. It was averred in the petition that he had threatened, and was about, to tear down their fences and cut down the trees growing on a strip of ground fifty feet wide and extending through the premises, and to permanently appropriate the strip of land to the use of the public; and that the proposed acts of the defendant were without lawful authority and would work irreparable injury to the plaintiffs' property. A temporary injunction was granted.

The defendant admitted in his answer that he was about to enter upon the land for the purpose stated, and he pleaded in justification that the strip of ground mentioned had been regularly condemned as a public

highway; that he was the road overseer of the road district where the land was situated, and that he had been ordered by the county court of the county to open the road.

Upon the hearing the temporary injunction was dissolved, and the proceeding dismissed. The plaintiffs have appealed.

On July 2, 1894, condemnation proceedings were instituted in the county court of Greene county for the purpose of establishing the road in question. The proposed route extended through the plaintiffs' premises. Their relinquishment of the right of way was not obtained, and the petitioners for the road so stated. The proceedings culminated in a judgment of condemnation, and the defendant, who is the road overseer of the district, was ordered by the county court to open the road. The record shows that, upon the filing of the petition for the road and proof of notice of its presentation, an order was made for the county road commissioner to view and mark out the road, but it fails to show that, previously to making this order, the county court had ascertained the probable damage to owners of land who had not consented to relinquish the right of way and the other necessary costs attending the opening of the road, and that, having thus ascertained the probable cost, it was adjudged that the road was of sufficient public utility to justify its establishment at the expense of the county, or that the petitioners had paid into the county treasury such estimated damage. The statement is made in the report of the commissioner that the plaintiffs and other nonconsenting landowners had *failed* to relinquish the right of way, but it did not state that they had *refused* to do so. Upon the filing of the report of the commissioner, the county court appointed three persons to assess the damages, but the record fails to

recite that they were *disinterested freeholders of the county*. They assumed, however, to act and refused to allow the plaintiffs any damages. In the foregoing particulars the plaintiffs claim that the proceeding for the condemnation of their land is fatally defective.

It is unnecessary to cite cases in support of the proposition, that in the exercise of the right of eminent domain the statute in all of its requirements must be substantially followed, and that, as such proceedings are *in invitum* and in derogation of the common law and of common right, every jurisdictional fact must affirmatively appear upon the face of the record. Nothing will be supplied by intendment or implication. It will only be necessary to refer to some of the reported cases to show the glaring and fatal irregularities in the proceeding here in controversy.

The report of the commissioner fails to show a compliance with the statute in at least one important respect. Section 7798 of the Revised Statutes, 1889, as amended in 1893 (Session Acts, 1893, p. 222), requires the commissioner to "take the names of all resident owners of land through which said road may run, and who have not or *will not* give the right of way, and the amount of damages claimed by each one separately," etc. Under a previous statute (R. S. 1879, sec. 6937), the supreme court in the case of *Chicago, etc., Railway Co. v. Young*, 96 Mo. 39, decided that the statute contemplated and required a *conference* between the landowner and road commissioner, and that the record must show that fact. It was also held that the fact was jurisdictional and necessary to the next step, to wit, the appointment of a board of commissioners to assess the damages. To the same effect is *Peed v. Barker*, 61 Mo. App. 556, where it is decided that the record must show that an effort was made to agree with the landowners. So in *Ells v. Railroad*, 51

Mo. 200, it was decided that the record must show affirmatively that the landowner *refused* to relinquish the right of way. To the same effect are the cases of *Moses v. Dock Co.*, 84 Mo. 242, and *Leslie v. City*, 47 Mo. 474.

The application of the same rule of construction renders the judgment in the condemnation proceedings void, for the further reason that the record does not recite that the three commissioners appointed to assess the damages were *"disinterested freeholders of the county, and that they were not of kin to any of the parties, etc."* Upon the filing of the report of the road commissioner the statute provides that, "if it appear that any person or persons through whose lands such proposed road or change of road should run have failed or refused to relinquish the right of way, and are not willing to take the amount of damages offered them by the court or petitioners, and if it further appears to the court that said proposed road or change of road is of such great public utility as to warrant the opening and establishing, or change, at the expense of the county, the county court shall appoint by order of record, *three disinterested freeholders of the county, who are not interested or of kin to any of the parties asking damages* on account of the location or change of said road, to act as a board of commissioners," etc. Sess. Acts, 1893, p. 223, sec. 3.

It thus appears that persons qualified to sit on such an inquest must be disinterested and not of kin to the parties, and that they must be freeholders of the county. The power and duty of selection is imposed on the county court, and its record must affirmatively show that the persons thus selected possess the statutory qualifications. Failing in this, the judgment of condemnation must be held to be void. *State ex rel. v. City*, 1 Mo. App. 503; *Fore v. Hoke*, 48 Mo. App.

254. The record recital here is simply that W. H. Wade, Wallace Blackman, and T. L. Barrett, were appointed to view the premises and assess the damages.

Section 7798· of the statute, as amended (Sess. Acts, 1893, *supra*), makes it the duty of the county court to ascertain the probable damages to nonconsenting landowners (if there are any), and also form an estimate of the cost of opening the road, etc., and upon the facts thus found the court must determine whether the road is of sufficient importance to the public to justify its opening at the expense of the county. If is so determined, or if the petitioners pay the estimated damages into the county treasury, then it is made the duty of the court to order the road commissioner to survey the road, etc. The record fails to show that the county court made any such estimates, or that it determined that the road in question should be opened at the expense of the county, a matter which it was impossible to intelligently determine except upon estimates. That such estimates are important and essential appears from other portions of the road law, for in the last clause of section 7798, as amended, it is provided that, if it appears from the report of the commissioner that the right of way has been secured by the commissioner, *"or that the damage claimed does not exceed the amount offered by the court,* or deposited by the petitioners as aforesaid, the court shall order the road established or changed, as the case may be."   And by the succeeding section (7799) it is provided that, if any of the landowners have refused to relinquish the right of way, *"and are not willing to take the amount of damages offered by the court or petitioners,* * * * the county court shall appoint by order of record three disinterested freeholders of the county * * * to act as a board of commissioners,"

etc. These provisions make it clear that the first step to be taken by the county court, in establishing a road, is to inquire into and determine the probable damage to landowners who refuse to relinquish the right of way and the probable cost of opening the road, and it is apparent that subsequent steps can not be taken until these matters are determined. For this additional reason we must conclude that the proceedings in the county court for the establishment of the road in question are absolutely invalid.

That injunction is the proper remedy, is settled by the decision of the supreme court in the case of *Carpenter v. Grisham,* 59 Mo. 247.

With the concurrence of the other judges the judgment of the circuit court dissolving the temporary injunction and dismissing the cause will be set aside, and the cause remanded with directions to reinstate the temporary injunction, and enter a final decree making it perpetual. All the judges concur.