## CITY OF TARKIO v. CLARK, Appellant.

**Division One, February 15, 1905.**

1. **APPELLATE JURISDICTION:** Constitutional Question: No Exceptions. A constitutional question, in order to be reviewable in the Supreme Court, must either be imbedded in the record proper, or must be squarely raised in the trial court and exceptions saved to the ruling of the court thereon and preserved in the bill of exceptions (the only repository of exceptions).

2. ———: ———: ———: Motion to Quash. A motion to quash a condemnation proceeding on the ground that the statute under which the proceeding was begun was unconstitutional, unless embodied in a bill of exceptions, does not so raise a constitutional question as to make it reviewable on appeal. All motions

interlocutory in their character can become a part of the record only by being preserved in a bill of exceptions. Only motions which when served are in effect due process of law or original and independent proceedings, are considered as pleadings and part of the record proper.

3. ———: **Condemnation: Title to Real Estate.** The Supreme Court has appellate jurisdiction in a condemnation case begun by a city to establish a public street. Title to real estate is involved in such proceeding.

4. **CITIES: Condemnation: Petition.** The right of a city of the fourth class to condemn private property for a public use needs no petition of citizens to set it in motion.

5. ———: ———: **Ordinance or Resolution.** An ordinance, and not a resolution, is the initial step in a proceeding to condemn private lands for street purposes.

6. **APPELLATE JURISDICTION: Record Proper: Condemnation: Cities.** In an appeal from a proceeding by a city of the fourth class to condemn private property for street purposes, the record proper is as follows: the ordinance and documents filed therewith occupy the place of a petition in a road case or ordinary suit; the notice to be served personally on interested parties five days in advance of the hearing is the summons or due process of law; the report of the jury is the verdict or special finding; and they, with the appointment of the jury and its entry on the city records, together with the judgment of the circuit court, constitute the record proper for the purposes of the appeal, where there is no bill of exceptions, and the defendant landowner in the circuit court, after filing a motion to quash the proceedings, stood mute.

7. **CITIES: Condemnation: Jurisdictional Facts: Freeholders.** The proceedings by a city of the fourth class to condemn private property for a street must show on their face that the jury appointed by the mayor to determine the compensation to be paid, were disinterested freeholders. A recital of that fact in the record is jurisdictional, and its absence is fatal to the proceeding.

8. ———: ———: ———: **Notice.** So likewise must the record on its face recite that five days' personal notice was given the property-owners, and the absence of such a recital is also fatal.

9. ———: ———: ———: **Defining Boundary.** So must the proceedings on their face show that a benefit district was marked out by ordinance *before* the appointment of the jury of awards, and if no such prior ordinance was passed the proceedings were void.

10. ———: ———: ———: **Indefinite Boundaries.** Unless in the record proper the length and termini of the street to be established and the land proposed to be taken are defined by metes, bounds or calls, or maps, plats or documents called for, the proceedings are void for indefiniteness.

11. **CONDEMNATIONS: Generally.** Proceedings for the taking of private property for public use operate *in invitum,* in derogation of the common law and common right, and are to be strictly pursued.

Appeal from Atchison Circuit Court.—*Hon. Gallatin Craig,* Judge.

REVERSED.

*Hunt & Bailey* for appellant.

(1) The charter and ordinances of a city stand in the same relation to each other as the constitution and statutes of a State. And the same rules are applicable in the one case as in the other in determining a conflict between the charter and ordinance. In other words, the charter of a city is its constitution. Quinette v. St. Louis, 76 Mo. 402; Kansas City v. Hallett, 59 Mo. App. 160. (2) Section 5993, Revised Statutes 1899, is unconstitutional and violates section 21 of article 2 of the Constitution, in this, that no provision is made, in said section or in said article five of said act, for the payment of the damages. Constitution, art. 2, sec. 21; Newby v. Platte County, 25 Mo. 258; Provott v. Railroad, 57 Mo. 256. (3) It nowhere appears on the face of the proceedings that the corporation or the jury assessing the damages, or the city council of Tarkio, or the circuit court, had jurisdiction of this case. (a) The jurisdictional points are these: first, it must be shown on the face of the proceedings that the five jurors appointed by the mayor are disinterested freeholders of the city; second, that said jury acted under oath, faithfully and impartially to make the assessment to them submitted; third, that said jury "shall estimate

the amount which other persons, owning adjacent property within the limits as hereinafter provided, will be benefited;'' fourth, that five days' personal notice shall be given to each of the owners of property lying within the limits; fifth, "the city authorities shall, before appointment of said jury of freeholders, define by ordinance the limits within which private property is deemed benefited by said change, enlargement or improvement." This is mandatory. These are the five requisites of the statute; not one of which has been complied with, nor does it appear anywhere on the face of the proceedings that there was even an attempt to comply with any one of them. (b) The jury in their report wind up their finding in this language: "As to other property-owners adjacent to said street, we find that no damages be done by the opening of said street." The statute says they "shall make to the person or persons whose property shall be taken or injured thereby adequate compensation." This finding by the jury is entirely insufficient and the whole proceedings are of no effect. Jamison v. Springfield, 58 Mo. 224; Kansas City v. Bird, 98 Mo. 215; Kansas City v. Morton, 117 Mo. 446. (c) The statute must be strictly complied with. There is no attempt to comply with the statute. Westport v. Jackson, 69 Mo. App. 157; State ex rel. v. School Dist., 79 Mo. App. 103; Orich School Dist. v. Diston, 125 Mo. 439; Independence v. Gates, 110 Mo. 386; Westport v. Smith, 68 Mo. App. 67. (d) Every matter to confer jurisdiction must affirmatively appear upon the face of the proceedings; otherwise they will be void. Fore v. Hoke, 48 Mo. App. 254; Railroad v. Lewright, 113 Mo. 660. (e) The essential steps pointed out by the statute must be strictly pursued, and it must affirmatively appear from the records that all such steps have been taken. Fore v. Hoke, 48 Mo. App. 254; Taylor v. Todd, 48 Mo. App. 550. (f) Since a citizen is entitled, as an individual right, to the enjoyment of his property and the disposal of it on his own terms,

and the exercise of the right of eminent domain is in derogation of these rights, and can be justified only on the ground of necessity, the power depriving him of it, even with payment at an estimated fixed price by others, is most extraordinary, and the right should be construed with great strictness. Ellis v. Railroad, 51 Mo. 200; State v. Farrell, 36 Mo. App. 282; Refinery Co. v. Elevator Co., 82 Mo. 121; Thompson v. Railroad, 110 Mo. 147; Railroad v. Clark, 119 Mo. 357. (g) And the statute authorizing it must be strictly adhered to, and every prerequisite to the exercise of the jurisdiction must be observed. Leslie v. St. Louis, 47 Mo. 476; Refinery Co. v. Elevator Co., supra; St. Louis v. Gleason, 89 Mo. 67; St. Louis v. Gleason, 93 Mo. 33; State v. Farrell, 36 Mo. App. 282; Fore v. Hoke, supra. (h) The exercise of eminent domain by cities is not regulated by the code practice in this State, but by special provisions of charter. Kansas City v. Oil Co., 140 Mo. 458; State ex rel. v. School District, 79 Mo. App. 103. (4) (a) It must appear on the face of the proceedings that the jury appointed to assess damages are freeholders of the city. It does not so appear in these proceedings. Fore v. Hoke, 48 Mo. App. 254; State v. St. Louis, 1 Mo. App. 503. (b) It nowhere appears that the jury appointed to assess benefits acted under oath, or that they returned their finding under oath. Cory v. Railroad, 100 Mo. 282. (c) The jury assessed no damages to other persons owning adjacent property. They assessed no benefits to those within the prescribed limit. (d) The city authorities did not define by ordinance, before the jury was appointed, the limits within which private property is deemed benefited. This is mandatory. Railroad v. Railroad, 138 Mo. 591; Kansas City v. Reed, 98 Mo. 215; Sedalia v. Gallie, 49 Mo. App. 392; Cooley's Const. Lim. (2 Ed.), sec. 563. (5) The resolution attempted to be passed by the city council of Tarkio, and

found in. the proceedings, is a nullity. It is nowhere shown that it was passed with the formalities of an ordinance, or signed by the mayor, or yeas and nays called. It is void and out of this case. Wheeler v. Poplar Bluff, 149 Mo. 45; Westport v. Martin, 62 Mo. App. 647; Eichenlaub v. St. Joseph, 113 Mo. 395; Graham v. Carondelet, 33 Mo. 262. (6) Cities of the fourth class can act only by ordinance. Secs. 5955, 5956 and 5957, R. S. 1899; Hisey v. Charleston, 62 Mo. App. 381; Cape Girardeau v. Fongue, 30 Mo. App. 551; Poplar Bluff v. Hoag, 62 Mo. App. 672; Springfield v. Knott, 49 Mo. App. 612. (7) It is for the courts to determine the validity of an ordinance. Railroad v. Springfield, 85 Mo. 674; Cape Girardeau v. Riley, 72 Mo. 220. A defective ordinance can not be cured by resolutions, however solemnly passed; by the return of the award of the jury; by the journals; or otherwise. It takes an ordinance to cure the defect. St. Joseph v. Wilshire, 47 Mo. App. 125; Bayha v. Taylor, 36 Mo. App. 427.

*William R. Little* for respondent.

(1) The city council has power to create, open and improve any street, avenue, alley or any other public highway within the corporate limits of the city. Sec. 5990, R. S. 1899. (2) Sections 5990 and 5993, Revised Statutes 1899, are constitutional. Barber Asphalt Paving Co. v. French, 158 Mo. 534. (3) The city council could take private property for public use, either by ordinance or resolution, upon proper compensation to the owner. Secs. 5989 and 5993, R. S. 1899; 158 Mo. 534; 107 Mo. 203. (4) The granting of any power to a municipal corporation carries with it the authority to put that power into effect. If the charter provides for the payment of damages assessed by a jury of freeholders for private property taken for public use, the council will have the right to pass an ordinance appropriating money to pay such damages, even though

the charter does not expressly confer such power.  Ex parte Marmaduke, 91 Mo. 251; State ex rel. v. Railroad, 164 Mo. 208.  (5)  The same rule applies to the construction of ordinances as to legislative acts.  The ordinance must be construed altogether, and when that is done it becomes plain that the council intended to extend First street east to the corporate limits of the city.  The title sets out such fact and cures the defect in the section 2 of the ordinance.  St. Joseph v. Porter, 29 Mo. App. 605; State ex rel. v. Hostetter, 137 Mo. 636; Andrew Co. ex rel. v. Shell, 135 Mo. 31.  (6)  The forms prescribed by law for the passage of statutes are directory, if there is no provision making the statute void, if the said forms are not complied with (Railroad v. Governor, 23 Mo. 253), and the same principle applies to the acts of a municipal corporation.  Hence, the resolution adopted by the city council for opening the street in controversy is a sufficient basis to sustain the verdict and judgment in this case.  St. Louis v. Foster, 52 Mo. 513; Cape Girardeau v. Riley, 52 Mo. 424.  (7)  The exercise of the right of eminent domain by cities of the fourth class is not governed by the code but by the statute or charter conferring the power to exercise the right.  The record need only show those facts which the statute makes mandatory.  The provision that the jury appointed to assess damages shall be freeholders, or shall be sworn before entering on their duties, is not mandatory, and if such facts do not appear in the record, the law presumes that they existed. Kansas City v. Marsh Oil Co., 140 Mo. 458; secs. 5993 and 5990, R. S. 1899; Byne v. Carson, 70 Mo. App. 126; State v. Baty, 166 Mo. 561; Johnson v. Hutchison, 81 Mo. App. 299.  (8)  The report of the jury of freeholders shows that all parties concerned were served with notice to appear before them and be heard.  Defendant Clark waived any defect in the notice to him by appearing before the jury and testifying in the

cause.    Barnett v. Lynch, 3 Mo. 369; Rice v. Railroad, 3 Mo. App. 27.

LAMM, J.—Respondent, a city of the fourth class, seeks by condemnation proceedings under the exercise of the right of eminent domain, to extend one of its thoroughfares (First street) by virtue of sections 5990 and 5993, Revised Statutes 1899.

Appellant Clark, owning land taken by the proceedings, appealed to the circuit court of Atchison county from the award of the mayor's jury, and, appearing for that purpose, filed a motion, bristling with points, to quash and dismiss the proceedings—raising thereby, among other questions, the constitutionality of said section 5993.    Unsuccessful in his motion, he withdrew from the new inquisition of damages in that court, stood mute, and, when judgment *de novo* went against him, filed his unavailing motion for a new trial and appealed here *without a bill of exceptions*.

In this court appellant presses his constitutional point, and furthermore insists that the court below committed error in overruling his motion to quash and dismiss.

At the threshold of the case two preliminary questions confront us: first, is the constitutional point duly presented; and, second, in the absence of a bill of exceptions, can we look into the motion to quash and dismiss, or consider the error, if any, in overruling it? Of these *seriatim*.

A constitutional point is no such magicial "open sesame" or shibboleth as that its bare mention in a brief gives this court jurisdiction of an appeal.    A constitutional point must be squarely raised below, the ruling of the trial court properly challenged thereon, exception saved and the exception preserved in the only known repository for exceptions, to-wit, a bill of exceptions, or else such constitutional point must appear imbedded in the record proper, before it can get here

for consideration.  [State ex rel. v. Smith, 176 Mo. 44, and cases cited; Ash v. Independence, 169 Mo. 77.]  The reasons underlying this rule of practice are too manifold and too manifest either to be ignored or to be threshed over and reformulated.

Was the motion to quash the proceedings and dismiss a part of the record proper, so that, in spite of the absence of a bill of exceptions, it comes before us? We think not.  The learning of the case law is against the proposition, and if litigants, lightly indulging in the daring of mere innovation at the expense of experience and discretion, choose to travel *extra viam* instead of safely keeping within the main-traveled roads of appellate practice, long established and well marked out, they take the chance of finding themselves out of court instead of in, at the end of their wandering.  Over and over again it has been held that the whole brood of motions, interlocutory in their character, motions for a new trial and in arrest, motions to make more certain, motions to strike out, to set aside a nonsuit, to dismiss, for judgment on the pleadings, to quash executions, to quash indictments and other motions of that ilk and kidney, become a part of the record only by being preserved in a bill of exceptions.  [Ryan v. Growney, 125 Mo. 474; State v. Hicks, 160 Mo. 468; Nickerson v. Peery, 163 Mo. 77; Smith v. Baer, 166 Mo. 392; Nishnabotna Drainage Dist. v. Campbell, 154 Mo. 151; Sternberg v. Levy, 159 Mo. 617; State v. Wilhoit, 142 Mo. 619; Force v. Van Patton, 149 Mo. l. c. 448.]

There is indeed an exception to the general rule, and it has accordingly been held that motions, which when served are in effect due process of law, or original and independent proceedings, are considered as pleadings and part of the record proper.  [Wilson v. Railroad, 108 Mo. l. c. 602; State ex rel. v. Court of Appeals, 87 Mo. 374; Ryan v. Growney, supra.]

There is the still further exception (if exception it be called) that a demurrer, stood on, is a pleading

which, with the judgment thereon, becomes a part of the record proper. [State ex rel. v. Jones, 155 Mo. 570; Hannah v. Hannah, 109 Mo. l. c. 240.]

But appellant's motion to quash the proceedings and dismiss does not stand on the same footing as a demurrer, or a motion which is an original and independent proceeding, or which fills the office of due process of law. We are disinclined to carve out a new exception to the general rule and thereby confuse the practice, and therefore rule that the constitutional question and the motion to quash and dismiss the proceedings are not before us.

Respondent brings here by way of an abstract all the evidence introduced in the circuit court. Appellant files a motion to strike it out. The motion is sustained. Evidence can only reach us through a bill of exceptions.

The constitutional question being out of the way and the amount of the money judgment for damages being trivial, the question presents itself: has this court jurisdiction of this appeal? Such question is not presented by the briefs, but jurisdictional questions obtrude themselves at any step or stage of a suit and will be considered *sua sponte*.

It has been held that the title to real estate is involved in condemnation proceedings instituted by railroads. [State ex rel. v. Rombauer, 124 Mo. 598; Railroad v. Lewright, 113 Mo. l. c. 666.] And in the establishment of public highways by counties. [Nickerson v. Lynch, 135 Mo. l. c. 475; Baubie v. Ossman, 142 Mo. 499.] And in the establishment of private ways of necessity. [Wells v. Harris, 137 Mo. l. c. 515.] And in cases involving a dedication of ground to public use. [Baker v. Squire, 143 Mo. 92.]

It remains, therefore, no longer an open question in Missouri as to whether or not this court, because of the constitutional provision giving it appellate jurisdiction of cases involving the title to real estate, has jurisdiction of condemnation proceedings based on the ex-

ercise of the right of eminent domain to establish an easement for public or private ways. It has such jurisdiction and we will look into the record proper to see if the proceedings on their face are valid, or *coram non judice*.

A petition was presented to the board of aldermen of the city of Tarkio numerously signed by citizens and praying the widening and extension of First street, and a resolution was passed by the board requiring said street to be widened and extended. Neither this petition nor this resolution is contemplated by the statutory grant of power in respondent's charter. The resolution was not passed with the formality of an ordinance, it is not signed by the mayor and does not rise to the dignity of an ordinance.

The mayors of cities of the fourth class (section 5955) are a part of the law-making power.

Section 5979, Revised Statutes 1899, reads: "The cities coming under the provisions of this article, in their corporate capacities are authorized and empowered to *enact ordinances* for the following purposes: . . . second, to open and improve streets, avenues, alleys and other highways . . ."

Section 5990 reads: "The board of aldermen shall have power to create, open and improve any . . . street, avenue, alley or other highway, old or new, . . . *Provided,* that all damages sustained by the citizens of the city or owners of the property therein shall be ascertained as prescribed in that portion of this article relating to the condemnation of private property for public use . . ."

Section 5993 (so far as pertinent to this case) reads: "Private property may be taken for public use for the purpose of establishing, opening, widening, extending or altering any street, avenue, alley . . . but in every case the city shall make to the person or persons whose property shall be taken or injured thereby adequate compensation therefor, to be deter-

mined by the assessment of five disinterested free-holders of the city to be appointed by the mayor, who shall, in the discharge of their duties, act under oath faithfully and impartially to make the assessment to them submitted. And in determining the same, said jury of freeholders shall consider the benefits result-ing to, as well as the damages sustained by, the owner of the property so taken; and said jury shall, moreover, estimate the amount which other persons, owning ad-jacent property within the limits as hereinafter pro-vided, will be benefited thereby, who shall contribute toward compensating the person or persons injured and such amount shall constitute a lien in favor of the city on the said adjacent property; all of which shall be returned by said jury of freeholders under their hands and seals to the board of aldermen. The said jury of freeholders shall set a day and place for hear-ing evidence as to said benefits and damages, and shall give at least five days' previous notice of such day and place to each of the owners of property lying within the limits hereinafter mentioned: *Provided,* that such owners are residents of the county. Personal service of a written notice shall be deemed sufficient. . . . The person or persons who shall be benefited and so assessed shall pay in such manner and time as shall be provided by ordinance. . . . The city authori-ties *shall, before the appointment of said jury of free-holders, define by ordinance the limits within which private property is deemed benefited by said change, enlargement or improvement aforesaid;* and the ap-pointment of the jury of freeholders aforesaid by the mayor shall be entered by the city clerk upon the rec-ords of the city. . . . Appeals may be taken from the decision of the jury of freeholders in the same time and manner and to the same court as from judgments of justices of the peace. And when an appeal shall be perfected, it shall operate as a stay of further proceed-ings until finally determined. . . ."

The foregoing constitute the whole charter scheme, applicable to this case, for the exercise of the right of eminent domain on the part of cities of the fourth class in condemning private property for street easements. Sections 5979, 5990 and 5993, construed *in pari materia*, leave no room for doubt, (1) that the exercise of the right of eminent domain needs no such adventitious aid as a petition of citizens to set it in motion, and (2) that an ordinance and not a resolution is the initial step. The petition of citizens and the resolution, if of any account, can not be deemed part of the record proper.

Reasoning by analogy we conclude that the ordinance in the case and documents, if any, called for therein, occupy the place of a petition in a road case or ordinary suit, the notice to be served personally on interested parties five days in advance of the hearing is the summons or due process of law, the report of the jury is the verdict or special finding, and they, with the appointment of the jury and its entry on the city records, constitute the record proper, together with the judgment of the circuit court.

It has been held that in a collateral attack on condemnation proceedings, where the record is silent in certain particulars, presumptions may be indulged in favor of correct action. [Leonard v. Sparks, 117 Mo. 103.] But this is a direct attack and the appellant challenges the validity of these proceedings on appeal.

It is contended by appellant, among other things, that the proceedings on their face, (1) do not show that a jury of disinterested freeholders was appointed by the mayor as provided by section 5993, (2) do not show the five days' notice or any notice to interested parties provided by said section, (3) do not show that a benefit district was marked out by ordinance *before* the appointment of the jury, and (4) it is contended that the ordinance and proceedings are fatally indefinite and vague. Many more contentions are pressed upon us by

appellant, but the foregoing are the vital ones, and will be considered in their order.

First, the record proper is silent as to whether the mayor's jury were disinterested freeholders or freeholders at all. Neither in the appointment of the jury, nor in their report, nor in the proceedings of the board of aldermen, nor in the subsequent judgment of the circuit court, is this statutory qualification of the jury recited as a fact. It has been held that such recital in the record is a jurisdictional fact and its absence fatal to the proceedings. [Fore v. Hoke, 48 Mo. App. 254, and cases cited; Jones v. Zink, 65 Mo. App. 409; Sutherland v. Holmes, 78 Mo. 399.]

Second, the five days' notice provided by section 5993, and which performs the office of a summons and gives those interested their day in court, is not shown by the record, nor does the record show that appellant Clark appeared and thereby waived the notice. Such notice or its waiver is a jurisdictional fact and should appear on the face of the proceedings. [2 Dill. Mun. Corp. (4 Ed.), sec. 607; Railroad v. Young, 96 Mo. 39; Zimmerman v. Snowden, 88 Mo. 218; Daugherty v. Brown, 91 Mo. 26; Sedalia v. Gallie, 49 Mo. App. 392.]

Third, a plain statutory condition precedent to the right of a city of the fourth class, under section 5993, to condemn land for a street, is the defining by ordinance of a benefit district or limit within which property is deemed benefited by the board of aldermen. Such mandatory condition precedent was disobeyed in this case. No such ordinance was passed, nor did the jury assess any benefits. It is true that the city out of its treasury, as shown by a subsequent ordinance, appropriated funds to pay appellant the damages awarded him by the jury. We are not called upon to decide whether or not a city of the fourth class might have paid a deficit out of its funds, had the assessment of benefits fallen short of its mark, nor are we called upon to decide whether or not such city might *anticipate* the

collection of assessed benefits and pay the damages out of its treasury to be recouped later by collecting the benefits previously assessed by the jury. The question is one of jurisdiction. Did the mayor have power to appoint a jury to assess damages *before* an ordinance was passed defining the benefit district? The statute says not, and so say we. The statute says the one step shall be taken before the other, and, unless we are willing to allow this provision of the law to perish by construction, it must be upheld. We hold the proceedings void because of the failure of the city to first define by ordinance a benefit district.

Fourth, nowhere in the record proper do the length and the *termini* of the proposed extension of First street appear, nor is the land proposed to be taken defined by metes, bounds or calls, or by maps, plats or documents called for, so that what is uncertain might be made certain by such aids.

No man could locate the extension or the land taken by aught appearing in the record proper. Under such condition of things the proceedings are void for indefiniteness. [Rose v. Kansas City, 128 Mo. 135; Sutherland v. Holmes, supra; 2 Lewis on Em. Dom. (2 Ed.), sec. 510; Elliott on Roads and Streets (2 Ed.), sec. 357.]

Proceedings taking private property for public use operate *in invitum,* in derogation of common law and common right. They are regarded as *strictissimi juris.* The power is a high and stringent one, courts inflexibly require it to be pursued strictly, and the times are such that we ought not to abate one jot or one tittle of vigilance in preserving the rights of the citizen to his property.

Because the proceedings are void, the cause is reversed.

All concur.