HENRY N. WIESE ET AL., APPELLEES, v. CITY OF SOUTH OMAHA ET AL., APPELLANTS.

FILED JANUARY 20, 1910. No. 15,880.

1. **Cities: IMPROVEMENT DISTRICTS: BOUNDARIES: NOTICE.** It is the duty of a city, when creating an improvement district for a local improvement, to define the limits thereof with sufficient certainty to identify the lots or lands sought to be included therein, and to publish a statement of such limits, in the manner and for the time required by statute, prior to the levying of any assessment upon adjacent property to pay for such improvement.

2. ——: ——: ——: ——: JURISDICTION. The statutory requirements for the fixing of such limits and the publication of the same prior to the levying of any such assessment are mandatory and jurisdictional.

3. ——: SPECIAL ASSESSMENTS: COLLATERAL ATTACK. Where a special assessment for such improvement is made without a compliance with such jurisdictional requirements, such assessment is void, and may be assailed collaterally.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*S. L. Winters,* for appellants.

*A. H. Murdock* and *A. C. Pancoust, contra.*

FAWCETT, J.

In 1905 the defendant city of South Omaha graded that part of K street in said city lying and being between the west line of Twenty-sixth street and the east line of Twenty-seventh street. Plaintiffs, who are owners of lots adjacent to that portion of K street, brought this suit in the district court for Douglas county to enjoin defendant city from collecting the special assessments attempted to be levied upon the property of plaintiffs to pay for the cost of such grading. The principal point relied upon by plaintiffs is that the defendant city, prior to advertising for bids and letting the contract for such grade, and levying such special assessments, failed to create an improvement district defining the boundaries thereof, as required by statute. Defendant contends: (1) That the statute did not require the prior ordinance creating the district to define the boundaries. (2) That even if the statute did so require, and even if it failed to definitely describe such boundaries, its failure to do so "would be a mere irregularity, and not a jurisdictional defect, which those whose property are assessed to pay for such improvement can collaterally attack." The district court found generally for plaintiffs, and perpetually enjoined defendant city from attempting to collect the special assessments levied

for such improvement, and quieted title of plaintiffs in and to the property set out in the petition.

Section 8329, Ann. St. 1907, which both sides in their briefs concede was in force at the time this improvement was made, provides: "The mayor and council may create improvement districts for the purpose of improving the streets, boulevards, alleys or other public grounds therein, by paving, repaving, macadamizing, curbing and guttering or reguttering, and grading in such manner as may be determined upon. The improvements named shall only be authorized upon the following conditions; except as in this act may be otherwise provided, to wit: The mayor and council shall order such improvements and cause them to be made in any district within the city, only when a petition on its face purporting to be signed by the owners representing the majority of the taxable feet front upon the street, alley or other public thoroughfare, or any part thereof, shall have been filed with the city clerk. Each signer to the petition shall duly acknowledge the signing and execution thereof before a notary public. A brief statement of the limits of the district, and the nature of the improvements, together with the names signed to the petition and the description of the property listed after the names shall be published in the official paper for five times. * * * None of the improvements shall be finally ordered or the contract let for the same except upon and in pursuance of such petition; nor until twenty days after the last day of publication of said petition shall have expired. At any time within twenty days after the publication of said petition or at any time before making a contract pursuant to such petition, any taxpayer within such improvement district may file with the city clerk a protest in writing," etc. Ordinance No. 1363, under which defendant city undertook to create the improvement district, is as follows: "Section 1. That improvement district No. 22, being grading district No. 69, be and the same is hereby created and established and defined as follows: All that territory included within the west line

of Twenty-sixth street and the east line of Twenty-seventh street, on each side of K street and back to the alley." The plat of the defendant city, introduced in evidence, shows that K street runs east and west, and Twenty-sixth and Twenty-seventh streets run north and south. Block 65 lies north and block 69 south of K street, so that the portion of K street which was graded is one block in length, between Twenty-sixth and Twenty-seventh streets and blocks 65 and 69. The alleys in these two blocks run north and south. There are no alleys running east and west. It will be seen, therefore, that the boundary of this improvement district, described in said ordinance as "all that territory included within the west line of Twenty-sixth street and the east line of Twenty-seventh street, on each side of K street *back to the alley,*" does not describe any possible boundaries, except "on each side of K street," for the reason that there is no alley running parallel with K street, either north or south thereof. There being no alley to indicate either the north or the south boundary of the district, who could say how far the district extended in either of said directions? Did it extend one, two, three, or six lots in each direction? If the latter, then it would take in all of blocks 65 and 69; but the northern and southern termini would then be J street and L street, respectively. The owners of lots 4, 5, 8 and 9, in block 65, would have no more reason to conclude that their lots were included in the district, than would the owners of lots 1, 2, 3, 10, 11 and 12, in said block. In like manner, the owners of lots 2, 3, 10 and 11, in block 69, would have no more reason to conclude that their lots were within the district, than would the owners of lots 4, 5, 6, 7, 8, and 9, of said block. There being no way of determining, by an inspection of ordinance 1363, how far north or south of K street the district extended, how could plaintiffs or any other owners of lots lying in either direction from such street be bound by any publication in the official paper? The statutory requirement is: "A brief statement of the limits

of the district, and the nature of the improvements, * * * shall be published in the official paper for five times." It further provides: "At any time within twenty days after the publication of said petition or at any time before making a contract pursuant to such petition, any taxpayer within such improvement district may file with the city clerk a protest," etc. There being no "statement of the limits of the district," how can it be claimed that plaintiffs' lots were "within such improvement district"? It is quite clear that the legislature in calling for "a brief statement of the limits of the district" intended such a description as would apprise the owners of the lots within those limits, of the improvements which the city contemplated making, so that they could, within the time allowed, take such action as they deemed proper in the way of filing protests, etc.

Welty, Law of Assessments, sec. 297, says: "An important prinicple of law in this connection is that the district which is to be taxed with an assessment to pay for a local improvement must be accurately defined." In 1 Abbott, Municipal Corporations, sec. 342, it is said: "Where statutory or constitutional authority exists for the making of local assessments, a discretion is usually vested in the municipal authorities to divide their territory into such taxation districts for the construction of local improvements as seem advisable and the exercise of a sound discretion by them will not be interfered with by the courts. That the legislature of a state under constitutional authority may exercise the same discretion and power is axiomatic. By whatever authority the taxing district is established, however, it must be accurately defined." In *City of Tarkio v. Clark,* 186 Mo. 285, 299, the court say: "Fourth, nowhere in the record proper do the length and the *termini* of the proposed extension of First street appear, nor is the land proposed to be taken defined by metes, bounds or calls, or by maps, plats or documents called for, so that what is uncertain might be made certain by such aids. No man could locate the

extension or the land taken by aught appearing in the record proper. Under such condition of things the proceedings are void for indefiniteness (citing authorities). Proceedings taking private property for public use operate *in invitum,* in derogation of common law and common right. They are regarded as *strictissimi juris.* The power is a high and stringent one, courts inflexibly require it to be pursued strictly, and the times are such that we ought not to abate one jot or one tittle of vigilance in preserving the rights of the citizen to his property."

We think the reasoning of the authorities above cited is sound, and therefore hold: (1) That it is the duty of a city, when creating an improvement district, to define the limits thereof with sufficient certainty to identify the lots or lands sought to be included therein, and to publish a statement of such limits, in the manner and for the time required by statute, prior to the levying of any assessment upon adjacent property to pay for such improvement. (2) That the statutory requirements for the fixing of such limits and the publication of the same prior to the levying of any such assessment are mandatory and jurisdictional. (3) That, where a special assessment for such improvement is made without a compliance with such jurisdictional requirements, such assessment is void, and may be assailed collaterally. That a court of equity will enjoin the collection of a void tax or special assessment, is well settled in this state. *Touzalin v. City of Omaha,* 25 Neb. 817; *Bellevue Improvement Co. v. Village of Bellevue,* 39 Neb. 876; *Chicago, B. & Q. R. Co. v. Cass County,* 51 Neb. 369.

The judgment of the district court is

AFFIRMED.