BROWN REAL ESTATE COMPANY ET AL., APPELLANTS, V. LANCASTER COUNTY ET AL., APPELLEES.

FILED MAY 6, 1922. No. 22212.

1. **Highways: PAVING: PETITION: SIGNING: STATE OFFICERS.** Under section 1, ch. 215, Laws 1919, wherever a paving district is created by the board of county commissioners which includes property belonging to the state, the officers having in charge state institutions are authorized to sign a petition requesting the board to proceed with the improvement.

2. ——: ——: ——: ——: ——. In such case, a petition signed, "Board of Commissioners of State Institutions, by Henry Gerdes, Chairman," requesting the improvement to be made, is a sufficient compliance with the law to authorize the board of county commissioners to count the state's property as favoring the improvement.

3. ——: ——: ——: ——: ——. The board of commissioners of state institutions are the officials in charge of state institutions as contemplated by section 1, ch. 215, Laws 1919.

4. ——: ——: ——: IMPROVEMENT DISTRICT. Where a paving improvement is proposed under chapter 152, Laws 1917, there is no legal objection to including in the petition for the improvement more than one road, where the improvement contemplates one connected system or unit of paving.

5. ——: ——: ASSESSMENTS: RECOVERY. Section 4, ch. 200, Laws 1915, gives to an aggrieved party a right to maintain a civil action to recover so much of a special assessment paid as such party shows to be illegal, inequitable and unjust, provided

he has complied with the conditions precedent as set forth in said section, and not otherwise.

6. ——: ——: ——: ——: PLEADING. A petition to recover so much of a special assessment as is illegal, inequitable and unjust, based upon the provisions of section 4, ch. 200, Laws 1915, which fails to allege that the aggrieved party made complaint to the county board sitting as a board of equalization, does not state a cause of action.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*Field, Ricketts & Ricketts,* for appellants.

*Charles E. Matson, Harry R. Ankeny, Max G. Towle* and *Cosgrave & Campbell,* contra.

*Peterson & Devoe* and *W. B. Comstock, amici curiæ.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY, ALDRICH and FLANSBURG, JJ.

DAY, J.

This action was brought by several parties plaintiff, who were similarly situated, against the county of Lancaster, to cancel and set aside a certain special assessment levied upon their respective properties, lying and being within paving district No. 38 of Lancaster county, also to recover the amount of the first instalment of said assessment paid by the respective parties under protest, and to quiet the title of said respective parties in their lands as against the record lien of said special assessment. The petition was based upon the theory that the board of county commissioners had no authority or jurisdiction to order the improvement made, and were consequently without power when sitting as a board of equalization to levy an assessment upon the property within the district to pay for the same. The trial court sustained a demurrer to the petition, and entered judgment dismissing the action. Plaintiffs appeal.

The main question raised by the demurrer goes to the sufficiency of the petition to state a cause of action. The

petition is too voluminous to be set out in an opinion, but
we think the contentions of the parties will be understood
from the following discussion:

It appears that on May 19, 1919, the board of commis-
sioners of the county of Lancaster, hereinafter referred to
as the board, acting under the provisions of chapter 152,
Laws 1917, duly passed a resolution creating and establish-
ing paving district No. 38. The resolution specifically de-
scribed the roads to be paved, the territory to be embraced
within the district, and recited that the county would aid
in the improvement out of the county paving fund to the
extent of $10,000 a mile, and that the balance of the cost,
less any state or federal aid which might be extended,
should be assessed against the property within the district
in proportion to the benefits derived from the improvement.
The paving within the district embraced approximately
3,000 acres, of which about 900 acres were owned by the
state of Nebraska, and comprised the grounds upon which
the hospital for the insane and the state penitentiary are
located. The paving district in question lies immediately
adjacent to the city of Lincoln, and the roads included
within the improvement are so situated with reference to
each other and with certain paved streets of the city of
Lincoln as to form a "loop" passing the two state institu-
tions above named. From this loop the paving extended
a distance of half a mile further into the country along
what is denominated Fourteenth street. In a general way
the improvement may be described as follows:

Commencing at a point on the boundary of the city limits
where Park boulevard intersects South street, the paving
extends in a southwesterly direction along Park boulevard
for a distance of approximately three-fourths of a mile to
Van Dorn street, thence west on Van Dorn street one-half
of a mile, thence south one mile, passing the State Hospital
grounds, thence east one and one-half miles, passing the
State Penitentiary, to the highway known as "Fourteenth
street," from which point the improvement extends south
one-half of a mile, passing the State Penitentiary, and also

north about one and one-half miles, connecting at the city limits with city paving.

Following the creation of the paving district certain property owners therein filed petitions with the board requesting that the roads designated in the resolution be paved. Among the petitions so filed was one representing the 900 acres owned by the state of Nebraska, which was signed, "Board of Commissioners of State Institutions, by Henry Gerdes, Chairman." Thereafter the board referred the petitions to the county surveyor to ascertain and determine the aggregate frontage of the roads designated for improvement, and the aggregate frontage of property the owners of which had petitioned the county board to proceed with said paving, and determine whether the necessary frontage chargeable with the cost of the proposed improvement had signed the necessary petitions. The surveyor reported that the frontage represented by petitioners for the paving was more than 50 per cent. of the total frontage chargeable with the cost of the proposed improvement, and the board, relying on the report, found accordingly, and thereupon ordered the roads designated for improvement to be paved. While the finding of the board was not, strictly speaking, a finding that the owners of a majority of the property within the district chargeable with the cost of the improvement had signed petitions requesting the work to be done, we will so treat it, as it was conceded upon the argument that, if the petition representing the state's lands be excluded, the owners of a majority of the property within the district had not petitioned for the improvement.

On behalf of the plaintiffs it is urged that the petition signed, "Board of Commissioners of State Institutions, by Henry Gerdes, Chairman," should not have been counted as favoring the improvement, for the reason that there is no authority in the law for the state to sign such a petition, and, assuming that there be such authority, that it was not properly exercised. On the other hand, the defendant contends that such authority has been given, and

that it was properly exercised. Both sides rely upon chapter 215, Laws 1919, to support their respective contentions. Section 1 of the act reads as follows:

"Wherever any paving district is created along or ad-jacent to any state institution or the state fair ground, the officers having in charge state institutions, or the fair grounds, are hereby authorized and empowered to sign petitions in the name of the state, to create paving districts."

Section 3 of the act is as follows: "That for the purpose of paying the state's share of the cost of such paving in paving districts which have been or shall hereafter be fully organized, * * * there is hereby appropriated from the general fund in the treasury, the sum of $100,000."

We are called upon to determine whether the provisions of the act above quoted are broad enough to authorize the officers named to sign a petition on behalf of the state requesting the county board to proceed with the improvement. In the interpretation of statutes the cardinal rule to be observed is the ascertainment of the legislative will, and the courts in seeking the intent of the lawgivers will consider the object which the legislature sought to obtain, the language used, as well as other laws *in pari materia*, and will, if possible, harmonize all of the law upon a given subject and give meaning to every part thereof.

The law in reference to the general subject of paving in this state has now become fairly well settled. The first step in the process is the creation or establishment of a paving district. As applied to the situation now before us, this is done by a resolution of the board of county commissioners, defining the territory embraced within the district, designating the roads to be improved, and containing other information for the benefit of property owners, such as the amount of aid which will be extended by the county. The power of the board to create a paving district is in no wise dependent upon a petition of the property owners, although it is not infrequent that the action of the board is prompted by the solicitation of property owners. The second step is a petition of the owners of a majority of the

property in the district, computed on the zone basis, which is chargeable with the cost of the improvement, requesting the board to proceed with the improvement.

Section 1, ch. 152, Laws 1917, after authorizing the board, in counties having a city of the first class, "to grade and pave, repave, gravel, or macadamize any road, highway or boulevard in said county outside the corporate limits of such city and other cities and villages," further authorizes such board to create suitable road improvement districts comprising lots, tracts, or parcels of land abutting on, or adjacent to, or in the vicinity of, such road, highway or boulevard, which are specially benefited by such improvement. The section further provides that the paving districts shall be created by resolution, which shall designate and fix the proportion of the total cost of the improvement which shall be paid out of the county paving fund, and that the remaining cost of the improvement shall be paid by a special assessment upon the lands in such district in proportion to the benefits from such improvement. The section then recites:

"Provided, however, no such work and improvements shall be finally ordered or constructed unless a petition shall be signed by the owners of a majority of the property chargeable with the cost of the improvement or part thereof, such majority to be computed on the following basis: The district shall be divided into six equal zones on each side of the road, highway or boulevard to be paved and improved, the same to run parallel with said road, highway or boulevard, and all property in the first zones directly abutting on said road, highway or boulevard, shall be computed on the basis of fifty per cent. of the total area space in said district, and all property in the second zones twenty-five per cent., in the third zones ten per cent., and the fourth, fifth and sixth zones five per cent. each, which petition shall be filed with said board. * * * Upon the filing of such petition it shall be mandatory upon said board to at once proceed with such work and improvements, if there shall be available in said county paving fund a sufficient

amount to pay the proportion of the cost payable from such fund."

It will be noted that a petition of the owners of a majority of the property chargeable with the cost of the improvement is necessary before the board is authorized to proceed with the work, and, when such a petition is filed, it is then the board's duty to proceed with the improvement, if there are funds available for that purpose.

What, then, did the legislature have in mind in enacting chapter 215, Laws 1919, which has been heretofore set out? Did it mean simply to authorize the officers therein named to sign a petition "to create paving districts?" We think such an interpretation is too narrow a view to give to the act. In the first place, as has heretofore been said, a petition addressed to the county board to create a paving district is entirely unnecessary; so that, if it were held that the act merely authorized the signing of a petition "to create paving districts," we would ascribe to the legislature the doing of a futile and unncessary thing. Besides this, if the act be literally construed, we have the legislature saying that, whenever any paving district is created along or adjacent to any state institution, the officers named are authorized to sign a petition in the name of the state to create the district. We are not willing to believe the legislature intended such a futile and meaningless thing to be enacted into law. Construing the act of 1919 in connection with other laws *in pari materia,* it seems more reasonable and logical to believe that the legislature intended to authorize the officers named to sign petitions representing the state's property requesting that the improvement be made, and that the state's signature favoring the improvement should be counted the same as any other owner of a like amount of property.

It is true that an assessment could not be levied against the state's property, in the sense that if it were not paid the property could be sold to satisfy the assessment, but in the sense that the amount of special benefits to the state's property should be determined and paid was, we

think, clearly within the intendment of the legislature. This, we think, is shown by the fact that an appropriation was made amply sufficient to cover the amount of special benefits, which it might be determined the state's property received by the improvement.

We are, therefore, of the view that under section 1, ch. 215, Laws 1919, wherever a paving district is created by the board of county commissioners, which includes property belonging to the state, the officers having in charge state institutions are authorized to sign a petition requesting the board to proceed with the improvement.

Plaintiffs next contend that, if it be assumed that the officers named were authorized to sign petitions for the improvement in the name of the state, such power was not properly exercised. It is argued that a petition signed, "Board of Commissioners of State Institutions, by Henry Gerdes, Chairman," was not a signature of the state of Nebraska. We cannot agree with this contention. The spirit of the act was to permit the officers in charge of the state institutions to sign the petition for and on behalf of the state. A quite analogous question arose in *Eddy v. City of Omaha*, 72 Neb. 561. In that case the title to the property was in the school district. A paving petition in behalf of the school district was signed, "Board of Education, by Jonathan Edwards, President," and was held sufficient.

It is next argued by the plaintiffs that the proceedings of the board are void because more than one road is included in the improvement. While it appears that more than one road is included in the improvement, it also appears that the improvement, considered as a whole, constituted but a single unit, and forms a connected pavement. While the authority granted to the county board is to pave "any road, highway or boulevard," using the singular number, we think it too narrow a construction of the statute to hold that a separate and distinct petition of the property owners is required where two or more roads are joined in one improvement. If a neighborhood is bet-

ter accommodated by an improvement in the form of a cross or circle, or any other figure, than by a straight line, the law we are now considering does not forbid it. The present case is not analogous to those arising under the laws governing paving in cities, in which it has been held that separate streets cannot be included in a single improvement.

It seems clear, therefore, that the plaintiffs are not entitled to the relief prayed upon the ground that the board was without jurisdiction to proceed with the improvement, or to sit as a board of equalization and levy the assessment against the plaintiffs' property.

There is another theory suggested relating to that branch of the case wherein plaintiffs seek to recover the amount of special assessments paid under protest, which deserves consideration. Section 4, ch. 200, Laws 1915, gives to an aggrieved party a remedy in a direct action to recover so much of a special assessment paid by him as he shows to be illegal, inequitable and unjust. However, certain conditions precedent to the exercise of this right must be observed, among them, that the payment made by the aggrieved party should be under protest, with notice that he intends to sue to recover the same, in which notice he is required to state his grievance and the grounds therefor, and that the action must be brought within 60 days from the date of payment. This section further provides:

"No court shall entertain any complaint that such party was authorized to make and did not make to said board when sitting as a board of equalization, nor any complaint not specified in such notice fully enough to advise such board of the exact nature thereof, nor any complaint that does not go to the groundwork, equity and justice of such assessment."

The plaintiff's petition charged that the amount of the assessment upon their respective properties is illegal, unjust, and not in accordance with special benefits. The petition, however, does not charge that the plaintiffs made any complaint to the county board sitting as a board of

equalization. The remedy thus provided by the act of 1915 is made to depend upon certain prerequisite conditions which the plaintiffs have not complied with, and, therefore, this special remedy is not open to them. It has been repeatedly held by this court that a board of equalization when properly in session, with due notice given, acts judicially, and its action within its jurisdiction, where no fraud is shown, is not open to collateral attack. The remedy in such case is by error proceedings. *Webster v. City of Lincoln,* 50 Neb. 1; *Portsmouth Savings Bank v. City of Omaha,* 67 Neb. 50; *Morse v. City of Omaha,* 67 Neb. 426.

Plaintiffs can hardly claim a lack of knowledge of the assessment or of their rights with respect thereto. Section 3, ch. 200, Laws 1915, provides, in substance, that the board shall give due notice of the time and place of its meeting when sitting as a board of equalization, by publishing a notice once a week for three successive weeks in some newspaper in general circulation in the county at least ten days prior to the sitting of the board of equalization, or by service of a personal notice on each owner of property within the improvement district. The board of equalization is required to have for inspection a plat or map of the district showing the location of the improvement and the lots, tracts and parcels of land embraced in said district, and also submit a tentative plan of the assessment and allowance of damages, if any, with respect to each lot, tract or parcel thereof, and shall then hear any objections or complaints on behalf of the owners of such real estate as to the assessments of benefits, or the allowance of damages. A proper tribunal was created to hear the complaints of an aggrieved party and opportunity afforded to be heard. We are unable to see wherein the plaintiffs have a legal cause of complaint.

It would seem, therefore, that the plaintiffs have not stated a cause of action which entitles them to recover upon any theory of the case which has been suggested; and,

also, that the demurrer to the petition was properly sus·
tained and the action dismissed.

The judgment of the district court is

AFFIRMED.

MORRISSEY, C. J., and ALDRICH, J., dissent.

DEAN, J., dissenting.

The language of section 1, ch. 215, Laws 1919, seems to
be plain in its requirements when considered in connec-
tion with the entire scope of paving legislation. Section 1
reads:

"Wherever any paving district is created along or adja·
cent to any state institution or the state fair ground, the of·
ficers having in charge state institutions, or the fair
grounds, are hereby authorized and empowered to sign pe-
titions in the name of the state, to create paving districts."

It is said in the opinion of the majority that to interpret
the act according to the plain meaning of its words is to
impute to the legislature "the doing of a futile and unnec-
essary thing." If the act stood alone and was disconnected
from any other statute on the same subject the observa-
tion would doubtless be true. But the act does not stand
alone and when it is considered in connection with all of
the legislation on the same subject it is neither futile nor
meaningless.

The majority opinion invokes the rule of *pari materia*,
but under that beneficent, rule it destroys section 1, ch.
215, Laws 1919. The opinion interprets the act literally,
destroys its real intent, and causes a legislative act to ap-
pear ridiculous. Ordinarily the rule is otherwise employed.
I submit that a reasonable application of the rule would
preserve and give meaning to a meritorious act. Under
the rule of *pari materia* the act seems, simply to mean that,
wherever the installation of a paving district is contem-
plated by local authorities which is "along or adjacent to
any state institution," the officers having in charge such
institutions are authorized and empowered to sign petitions
"in the name of the state, to create paving districts." They

are not authorized by this or any statute to sign petitions to "grade and pave" any paving district. That is the main question at issue.

The main opinion observes that the power of the county board to create a paving district "is in no wise dependent upon a petition of the property owners." That is true only as it affects private owners of abutting property or private owners of property situate within the district zone to be affected. But it is not true as affecting. "officers having in charge state institutions." They are not excused. Nor are they, by virtue of official position, property owners in the ordinary and usual sense, nor in the sense of any paving statute. For these reasons, among others, and on this theory, in part, section 1, ch. 215, Laws 1919, was enacted. In this sense it should be given full force and effect in the comprehensive scheme of legislation as relating to paving districts. The outcome of the individual case is as nothing compared to an unsound interpretation placed upon an act of the legislature.

Clearly the legislature realized that the county board, having only limited jurisdiction and restricted powers, would be reluctant to make a move toward the creation of a paving district, which would be the beginning of an expensive and pretentious project, unless the creation of such district had first received the sanction of the state officers who are authorized and empowered thereunto by the act. Certainly the county board was entitled to know the attitude of the state officers toward the proposed undertaking before doing anything looking to the installation of an expensive system of paving. The legislature therefore wisely provided that the county board should be so informed by affirmative action of the state officers. The act does not make it compulsory upon the designated state officers to sign petitions to create paving districts unless the contemplated project meets with their approval. In that event to sign becomes an official duty. Strict compliance with its every requirement on the part of the designated officers is necessary to confer jurisdiction. Failure

to perform a statutory duty so plainly imposed should be held to be a fatal jurisdictional defect. That private property shall not be taken or damaged for public use without just compensation is a fundamental law of the land.

A paving law as it relates to highways in the open country, notwithstanding they may be almost a public necessity, very often imposes a grievous burden upon private owners of abutting property. Words need not be multiplied to establish the fact that in some districts, and certainly in the present case, the burden far exceeds the benefit derived by the individual owner. Those who are benefited the most are strangers to the title. Needless to say the paving does not contribute to productivity and it adds but a small sum to the value of the land as compared with the assessment. The law should therefore be strictly construed in all its parts to the end that it is not made a destructive force in the hands of the taxing power.

The omission to comply with the provision under discussion is not technical. It is vital as affecting jurisdiction. When public officers waive performance or for any reason fail to perform a duty imposed by a general scheme of legislation and which is necessary to confer jurisdiction it is as though the law had never been enacted. The petition required by statute having been omitted, it follows that the county board was without jurisdiction to act in the premises.

It is elementary that when a legislative act is obscure or even meaningless when standing alone, resort may properly be had to other parts of the law on the same subject to determine its meaning, to the end that the legislative purpose may not fail. Evidently the legislature did not consider the act futile nor unnecessary. The act forms an essential part of a comprehensive scheme of public enterprise.

It is aptly pointed out in plaintiff's brief that the filing of petitions by state officers "to create paving districts" is not a mere formal ceremony, but is the performance of a useful office, in that such petitions stimulate local officers

to action and satisfy them that there is a demand for the contemplated improvement in the community to be affected. It is also pointed out that, under the facts and the law, the county board would not and could not lawfully create a paving district until after the state signified its assent by its officers in the manner prescribed by the act.

*Hurford v. City of Omaha*, 4 Neb. 336, is a case that has to do with the assessment and collection of a tax for the improvement of streets. At page 353 we said: "Hence the statute must be strictly construed, for it has been said that every statutory authority in derogation of the common law to divest the title of one, and transfer it to another, must be strictly pursued, or the title will not pass. In *Creighton v. Manson*, 27 Cal. 613, it is said that 'when summary proceedings are authorized by statute, the effect of which is to divest or affect rights of property, the statute must be strictly construed, and the power conferred must be exercised precisely as given; any departure vitiates the whole proceeding.' *Stucker v. Kelly*, 7 Hill (N. Y.) 25." The *Hurford* opinion concludes: "This rule of law is so well established upon principle, and authority, that it is unnecessary to cite authorities in support of it."

Under the rule of *pari materia* section 1, ch. 215, Laws 1919, should be held to be operative. If so held, the county board, as we have seen, was without jurisdiction to engage in the paving enterprise under discussion because the signing of a petition by the state officers for the creation of a paving district, under the decisions, is a condition precedent to jurisdiction. *City of Enid v. Gensman*, 76 Okla. 90, and cases cited.

Defendants argue that plaintiffs cannot be heard to complain because they did not file objections within the time prescribed by the statute. In the absence of jurisdiction that objection does not apply when the proceedings upon which the assessment is based are void. *Morrow v. Barber Asphalt Paving Co.*, 27 Okla. 247. To the same effect is *Southern Surety Co. v. Jay*, 178 Pac. (Okla.) 95. In *Winfrey v. Linger*, 89 Mo. 159, it was held

that where a tax bill is void the property owner is not required to file objections to the assessment. To the same effect is *Richter v. Merrill*, 84 Mo. 150. In *Steinmuller v. City of Kansas City*, 3 Kan. App. 45, it was held that, when the proceedings are void upon which a special assessment is levied to pay the cost of grading city streets, the owner is not required to bring his action within the time limited by statute to defeat the collection of the assessment.

There is no authority in any paving or other statute authorizing officers in charge of state institutions to sign petitions to "grade and pave" highways. This is apparent from an examination of chapter 152, Laws 1917, which provides that, in counties having any cities of the class involved here, petitions to "grade and pave" highways shall be presented to the county board which "shall be signed by the owners of a majority of the property chargeable with the cost of the improvement or part thereof." Section 2 of the same chapter provides that, "If there be any real estate in such district belonging to any cemetery corporation or association, school district or other municipal or quasi-municipal corporation, it shall be the duty of the cemetery board, school board or other proper officers to provide for the payment of any such special assessments against such real estate on account of such improvements." But there is no provision that such association, school district or quasi-municipal corporation shall be authorized to sign a petition to "grade and pave" any highway. If the legislature had intended that state institutions should sign such petitions to "grade and pave" highways it would, by a parity of reasoning, also have provided that cemetery corporations, school districts and other municipal and quasi-municipal corporations should sign such petitions. But the legislature having made no such provision the court should take the law as it finds it. The court has no right to impose a duty or to confer a privilege, within the legislative domain, that was not imposed or conferred by the legislature.

The constitutional division of governmental powers must be respected and obeyed. The judicial branch of government must not presume to supply a link that it conceives to be missing in a legislative chain. Notwithstanding the ease and facility with which it may be done grave danger lies in that direction. The judiciary must be content to remain within its time-honored constitutional province. That the court shall not legislate is a constitutional inhibition that is of course everywhere recognized.

It is conceded that there are about 3,000 acres of land in the paving district and of this the state owns 900 acres. Plaintiffs insist that it is unjust to permit the state, with its immense acreage in the district, by its petition to "grade and pave," to force upon the private owners therein so costly an improvement, and that in this respect the private owner, who is not on equal terms with the state, might be financially ruined while the state with its vast resources would not feel the burden. The argument is sound and doubtless was in the legislative mind when the present system of paving laws was enacted. Hence, permission to sign was not given the state.

In the present case the object of the proceeding is to subject private property to a public use. On this point a distinguished jurist said that the statutory authority to do so must be strictly pursued; that the rule is fundamental and imperative and all of its substantial requirements must be regarded as a condition precedent to the validity of an assessment. 1 Cooley, Taxation (3d ed.) 464; *Batty v. City of Hastings*, 63 Neb. 26; *Casey v. Burt County*, 59 Neb. 624; *McCaffrey v. City of Omaha*, 91 Neb. 184; *Hutchinson v. City of Omaha*, 52 Neb. 345; *Harmon v. City of Omaha*, 53 Neb. 164; *Wiese v. City of South Omaha*, 85 Neb. 844; *Morse v. City of Omaha*, 67 Neb. 426.

While I insist that the officers having in charge state institutions are without authority under the law to sign a petition to "grade and pave" a district, yet a minor feature may be noticed. It is not of controlling importance, but is mentioned here merely to show that the board of state of-

ficers by a resolution authorized the chairman to sign a petition merely to create a paving district. The board in its resolution correctly interpreted its authority, but the chairman signed a petition to "grade and pave" highways. Evidently he was badly advised in the premises.

Edmund Burke in a speech in parliament denouncing a certain oppressive tax levy against the American Colonies gave to the world this expression: "The power to tax is the power to destroy." In modern civilization that age-old proverb is exemplified in many ways. To place a grievous and unreasonable burden upon the owner's property by an act of the legislature, where the burden greatly exceeds the benefit, is to deprive him of his property without due process of law. And that was done in this case. It is a polite form of forfeiture of private property for public use. To appropriate the owner's land without the clear, explicit and unmistakable sanction of the law, in the guise of taxation, is anarchy, because the result is the same as taking the title by force and giving it to another. The court is always driven far afield when it departs from the application of well-recognized and familiar rules in the construction of statutes. The same result follows the wrong application of a righteous rule.

For the reasons stated herein, I respectfully dissent from the decision of the majority of the court.