Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/12/2020 08:08 AM CDT

State of Nebraska, appellee, v.
John E. Thelen, appellant.
___ N.W.2d ___

Filed March 20, 2020.    No. S-19-604.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.

2. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. **Appeal and Error.** An appellate court independently reviews questions of law in appeals from the county court.

5. **Criminal Law: Courts: Appeal and Error.** When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court.

6. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

7. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

8. **Statutes: Legislature: Intent.** In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.

9. **Statutes: Appeal and Error.** An appellate court does not consider a statute's clauses and phrases as detached and isolated expressions. Instead, the whole and every part of the statute must be considered in fixing the meaning of any of its parts.

10. **Criminal Law: Statutes.** While a penal statute is to be construed strictly, it is to be given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.

11. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

12. **Highways: Words and Phrases.** A "public road" in Neb. Rev. Stat. § 39-301 (Reissue 2016) includes the entire area within the county's right-of-way.

Appeal from the District Court for Cedar County, Paul J. Vaughan, Judge, on appeal thereto from the County Court for Cedar County, Douglas L. Luebe, Judge. Judgment of District Court affirmed.

Bradley C. Easland, of Egley, Fullner, Montag, Morland & Easland, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

The defendant landowner appeals from criminal misdemeanor convictions for violating Neb. Rev. Stat. § 39-301 (Reissue 2016), by repeatedly erecting an electric fence approximately 3 feet from the edge of a county gravel roadway and within the county's right-of-way that extends into the ditch. The central question is whether a county's right-of-way extending into a ditch along a county roadway is a "public road" for purposes of § 39-301.

## BACKGROUND

In September 2016, John E. Thelen was charged with three counts of obstructing a public road in violation of § 39-301, based on repeated instances of erecting an electric fence within the ditch right-of-way of Cedar County, Nebraska (County), alongside a county road. Count I alleged that Thelen obstructed a public road on August 31, count II alleged that he obstructed a public road on September 6, and count III alleged that Thelen obstructed a public road on September 13. The pertinent language of § 39-301 provides, "Any person who . . . obstructs a public road . . . by encroaching upon the same with any fence . . . shall, upon conviction thereof, be guilty of a Class V misdemeanor . . . ." The complaint alleged that the County had incurred a total cost of approximately $400 in removing the obstructions.

A bench trial was held on stipulated evidence. The evidence was undisputed that the Cedar County Board of Commissioners (Board) had established pursuant to Neb. Rev. Stat. § 39-1702 (Reissue 2016) that the County's public roads' rights-of-way are 66 feet, measured from the centerline of the roadway on each side to a 33-foot distance to the ditch on each side. It was also undisputed that the County controls a public road running along the south side of Thelen's property and controls, maintains, and is responsible for its 66-foot right-of-way.

Both the County's highway superintendent, Carla Schmidt, and the chairman of the Board, David McGregor, averred that

since 2013, Thelen has continuously and repeatedly placed a fence within the County's right-of-way and has refused to voluntarily remove his fence after being given reasonable notice to do so.

According to Schmidt, for purposes of moving his cattle from one pasture to another, Thelen regularly placed his fence in the County's ditch right-of-way beginning in June and removed it in October or November. Schmidt noted that the fence had been repeatedly placed a mere 16½ feet from the roadway centerline.

McGregor averred that it was the County's duty to keep its public roads' rights-of-way free of debris, crops, fences, or any other obstructions. McGregor described that such obstructions presented a safety issue and that the County would subject itself to the loss of its tort liability insurance coverage if it failed to keep its ditches free of obstructions.

Schmidt similarly averred that the fences repeatedly placed by Thelen in the County's right-of-way endangered the traveling public and created liability for the County for the failure to comply with its statutory duty under § 39-301 to remove road obstacles.

According to Schmidt's and McGregor's affidavits, the County gave Thelen notices in August and October 2013 to remove his fence from the ditch right-of-way and he refused to comply. Instead, Thelen complained that other people in the County similarly obstructed the County's rights-of-way. Thelen sent a letter through his attorney requesting permission to place his fence in the County's right-of-way from June through October. In the letter, attached to Schmidt's affidavit, Thelen asserted that if his fence is removed by the County, his cattle would stray onto the roadway. The Board denied Thelen's request in October 2013.

Schmidt and McGregor both stated that, again, in March 2014, Thelen placed a newly erected fence in the right-of-way and refused to remove it after notice was given. Schmidt's affidavit, as well as other exhibits entered into evidence in

the 2016 actions, demonstrate that in September 2014, Thelen appeared before the Board at a regularly conducted meeting and the Board again denied Thelen's request for permission to erect a fence within the County's right-of-way.

In 2015, Thelen was found guilty of violating § 39-301 for erecting in July 2015 the same type of fence at the same location as alleged in the 2016 criminal complaint leading to the misdemeanor convictions presently on appeal. In its 2015 order, the county court found that the County's ditch right-of-way was encompassed by the term "public road." Further, the court explained that the law does not recognize as a defense the fact that others are violating the same law.

Thereafter, in September 2015, according to Schmidt and McGregor, Thelen placed his fence anew in the County's right-of-way. However, no additional criminal charges were filed against Thelen by the State in 2015 regarding the fence.

Chief Deputy Sheriff Chad Claussen averred that in 2016, he investigated the scene on July 18 and 21 and ascertained that Thelen had again erected an electric fence along the county road and in the County's right-of-way, which Thelen had previously been advised not to do. The fence was located approximately 16 to 31 feet from the centerline. The County gave notice to Thelen on July 26, directing him to remove the fence.

Claussen averred that on August 31, 2016, he again investigated the scene and found the fence still present. According to a report, the fence was no longer standing but was lying in the ditch right-of-way. Claussen seized as evidence approximately 1,500 feet of electric fence wire, 50 posts, and 68 electric fence insulators belonging to Thelen.

During the seizure, Thelen approached Claussen and "complained about the situation." When Claussen suggested that Thelen place the fence on his own property and outside of the right-of-way, Thelen advised Claussen that a prior county commissioner had given him permission to erect the fence there and that the new county commissioner, who he believed would

be elected in an upcoming election, would give him permission to do so in the future.

When Claussen attempted to give Thelen a receipt for the seized fence, however, he refused to take it, saying that "it was not his fence." Claussen left the receipt on a fencepost. The Cedar County Attorney averred that on September 1, 2016, Thelen came to his office requesting that the sheriff's office "return to him the fence seized" by Claussen on August 31.

Claussen averred that on September 4, 2016, he found that Thelen had erected another fence at the same location. He removed the fence and seized as evidence approximately 1,500 feet of single strand electric fence wire, 40 steel posts, and 40 electric fence insulators, which Claussen averred belonged to Thelen.

On September 13, 2016, Claussen observed that yet another fence had been erected in the same location. Claussen seized approximately 1,500 feet of single strand electric fence wire and an insulated gate belonging to Thelen.

According to McGregor, in July, August, and September 2016, the County received citizen complaints that Thelen was placing his fence in the County's ditch right-of-way, which led to Claussen's investigations. Schmidt summarized in her affidavit that in the spring of 2016, Thelen placed his fence in the County's right-of-way. Further, from July 2016 to the date of the affidavit, December 2016, Thelen had placed his fence in the County's right-of-way on three separate occasions and, each time, the County had removed the fence. According to Schmidt, Thelen "has indicated that he will continue to disregard my notices in the future because the fine is only $25.00, indicating cheap pasture rent."

The stipulated exhibits also included reports by Claussen and a deputy sheriff, describing their observations of the electric fence in the aforementioned right-of-way on August 31 and on September 4, 6, and 13, 2016. The deputy sheriff described that on September 4, he observed the "single strand hotwire" fence along the road approximately 3 feet from where the

gravel started, with multiple cows inside the fence. The affidavits and reports described the removal of the fence by county employees on September 6, as well as the removal on August 31 and September 13 of fencing that had been left lying in the ditch right-of-way.

Thelen submitted an affidavit in which he described the incident on September 1, 2016, when he went to the Cedar County Attorney's office to ask that the fencing materials taken be returned to him, because "my name was on the receipt." Thelen recounted that he had told both Claussen and the Cedar County Attorney that the materials were not his. Thelen did not, however, aver that the fencing materials were not his.

Finally, an exhibit entered into evidence by stipulation reflects $401 in labor costs by the County's road department for removal of fencing on August 31 and September 6, 2016, and for picking up wire in the ditch on September 13.

In August 2017, the county court convicted Thelen of three counts of violating § 39-301. Thelen was fined $100 for each violation. Thelen appealed to the district court, which, on May 22, 2019, affirmed the county court's judgment. Thelen appeals.

## ASSIGNMENTS OF ERROR

Thelen assigns that the county court erred in finding him guilty of the crimes charged because (1) there was insufficient evidence presented to prove that he was the individual who placed the electric fence in the ditch and (2) the placement of an electric fence in a ditch does not violate § 39-301. Thelen assigns that for these same reasons, the district court erred in affirming the county court's judgment.

## STANDARD OF REVIEW

[1] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.[1]

---

[1] *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

[2] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.[2]

[3] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[4] We independently review questions of law in appeals from the county court.[4]

[5] When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court.[5]

[6] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[6] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7]

[7] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[8]

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *State v. McCurdy*, 301 Neb. 343, 918 N.W.2d 292 (2018).

[7] *Id.*

[8] *Saylor v. State*, 304 Neb. 779, 936 N.W.2d 924 (2020).

## ANALYSIS

Thelen asserts that the County's ditch right-of-way alongside the county roadway does not constitute a "public road" for purposes of § 39-301. He does not contest that an electric fence is a "fence" constituting an obstruction under the statute. He does, however, argue that the evidence was insufficient to find that he erected the fences in question.

### Is Ditch Part of Public Road for Purposes of § 39-301?

The question of whether a ditch right-of-way is part of a "public road" for purposes of § 39-301 is a question of statutory interpretation. Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[9]

[8-10] In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.[10] An appellate court does not consider a statute's clauses and phrases as detached and isolated expressions. Instead, the whole and every part of the statute must be considered in fixing the meaning of any of its parts.[11] While a penal statute is to be construed strictly, it is to be given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[12]

Chapter 39, article 3, of the Nebraska Revised Statutes sets forth duties, rules, and penalties related to the safety and maintenance of "roads" and, to a lesser extent, "highways." Section

---

[9] *Id.*

[10] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

[11] *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014).

[12] *State v. Stanko*, 304 Neb. 675, 936 N.W.2d 353 (2019).

39-301, the statute directly at issue in these appeals, provides in relevant part:

Any person who injures or obstructs a *public road* by felling a tree or trees in, upon, or across the same, by placing or leaving any other obstruction thereon, by encroaching upon the same with any fence, by plowing or digging any ditch or other opening thereon, by diverting water onto or across such road so as to saturate, wash, or impair the maintenance, construction, or passability of such public road, or by allowing water to accumulate on the *roadway or traveled surface of the road* or who leaves the cutting of any hedge thereupon for more than five days shall, upon conviction thereof, be guilty of a Class V misdemeanor and, in case of placing any obstruction on the road, be charged an additional sum of not exceeding three dollars per day for every day he or she allows such obstruction to remain after being ordered to remove the same by the road overseer or other officer in charge of road work in the area where such obstruction is located, complaint to be made by any person feeling aggrieved.

This section shall not apply to any person who lawfully fells any tree for use and will immediately remove the same out of the road nor to any person through whose land a public road may pass who desires to drain such land and gives due notice of such intention to the road overseer or other officer in charge of road work nor when damage has been caused by a mechanical malfunction of any irrigation equipment, when a sprinkler irrigation system had been set so that under normal weather conditions no water would have been placed upon *the right-of-way of any road*, when the county board grants permission for the landowner to divert water from one area to another along a *county highway right-of-way*, or when a municipality has granted permission along or across the *right-of-way under its jurisdiction*, except that if damage has been caused by a mechanical malfunction of irrigation

equipment more than two times in one calendar year, the penalty provided in this section shall apply.

(Emphasis supplied.) Neb. Rev. Stat. § 39-304 (Reissue 2016) provides that "[a]ny person who willfully and maliciously injures any lawful public road in this state . . . shall, for every such offense, be guilty of a Class V misdemeanor . . . ."

Neb. Rev. Stat. § 39-310 (Reissue 2016), which refers to depositing materials on "public road[s]" or inside the "ditches of such road," provides:

Any person who deposits any wood, stone, or other kind of material on any part of any lawful public road in this state, inside of the ditches of such road, or outside of the ditches but so near thereto as to cause the banks thereof to break into the same, causes the accumulation of rubbish, or causes any kind of obstruction, shall be guilty of (1) a Class III misdemeanor for the first offense, (2) a Class II misdemeanor for the second offense, and (3) a Class I misdemeanor for the third or subsequent offense.

Neb. Rev. Stat. § 39-311 (Reissue 2016) is a similar, but more extensive, provision related to depositing materials on "highway[s]."

On its face, § 39-301 clearly distinguishes between a "roadway," which is the "traveled surface of the road," and the "road," which is something greater than the "roadway." Section 39-310 clearly includes ditches as part of the "road." Section 39-301 also makes several references to the "right-of-way," describing the right-of-way "of any road," and states that a person does not violate the statute when a sprinkler irrigation system was set so that under normal weather conditions no water would have been placed upon the right-of-way of any road or by diverting water along or across a right-of-way with permission of "the county board [or] municipality."

Neb. Rev. Stat. § 39-101(11) (Reissue 2016) defines "[r]oadway" as that "portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm

or shoulder." "Shoulder," in turn, is defined in § 39-101(12) as that "part of the highway contiguous to the roadway and designed for the accommodation of stopped vehicles, for emergency use, and for lateral support of the base and surface courses of the roadway." There is no statutory definition of a "berm."

[11] The terms "road" and "public road" are not defined in chapter 39, article 1, of the Nebraska Revised Statutes. But components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[13] We have accordingly found it appropriate to consider in pari materia different articles in the same chapter, when they concern related matters.[14]

"Road" is defined in Neb. Rev. Stat. § 39-1302(32) (Reissue 2016), in chapter 39, article 13, relating to the state highway system, and expressly includes "the entire area within the right-of-way": "Road shall mean a public way for the purposes of vehicular travel, including the entire area within the right-of-way. A road designated as part of the state highway system may be called a highway, while a road in an urban area may be called a street."

This definition of "road" as including the entire area within the right-of-way is consistent with numerous other statutes in chapter 39. Section 39-1702(2) provides that the right-of-way for "[c]ounty road purposes" "shall be of such width as is deemed necessary by the county board," and it specifically

---

[13] *Pittman v. Western Engineering Co.*, 283 Neb. 913, 813 N.W.2d 487 (2012). See, also, *Farmers Co-op v.* State, 296 Neb. 347, 893 N.W.2d 728 (2017), *modified on denial of rehearing* 297 Neb. 132, 898 N.W.2d 674; *Fontenelle Equip. v. Pattlen Enters.*, 262 Neb. 129, 629 N.W.2d 534 (2001).

[14] See, *Cookson v. Ramge*, 299 Neb. 128, 907 N.W.2d 296 (2018); *In re Application of Tail, Tail v. Olson,* 144 Neb. 820, 14 N.W.2d 840 (1944); *Greb v. Hansen*, 123 Neb. 426, 243 N.W. 278 (1932); *Brown Real Estate Co. v. Lancaster County*, 108 Neb. 514, 188 N.W. 247 (1922).

described the "right-of-way for such roads," providing in relevant part:

> County road purposes, as referred to in subsection (1) of this section, shall include provisions for, but shall not be limited to, the following: (a) The establishment, construction, reconstruction, relocation, improvement, or maintenance of any county road. *The right-of-way for such roads shall be of such width as is deemed necessary by the county board . . . .*

(Emphasis supplied.)

A "highway" under chapter 39 is just one form of a "road," and it is also consistently described as including the right-of-way. "Highway" is defined by § 39-101(3) as "*the entire width between the boundary limits* of any street, road, avenue, boulevard, or way which is publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." (Emphasis supplied.) Section 39-1302(22), which contains extensive provisions relating to the creation and maintenance of the state highway system, similarly defines "[h]ighway" as "a road or street, *including the entire area within the right-of-way*, which has been designated a part of the state highway system." (Emphasis supplied.)

"State highway system" is defined in § 39-1302(37) as

> the roads, streets, and highways shown on the map provided for in section 39-1311 as forming a group of highway transportation lines for which the [Nebraska Department of Transportation] shall be the primary authority. The state highway system *shall include, but not be limited to, rights-of-way*, connecting links, drainage facilities, and the bridges, appurtenances, easements, and structures used in conjunction with such roads, streets, and highways.

(Emphasis supplied.) In § 39-1302(31), "[r]ight-of-way shall mean land, property, or interest therein, usually in a strip, acquired for or *devoted to a road, street, or highway*." (Emphasis supplied.)

The "entire area" within the right-of-way is similarly included in the definitions in § 39-1302 of "[h]ighway" and "[s]treet" for purposes of cities of the metropolitan class. Under Neb. Rev. Stat. § 14-384(7) (Reissue 2012), pertaining to "highways" and "streets" in cities of the metropolitan class, "[h]ighway shall mean a road or street *including the entire area within the right-of-way* which has been designated a part of the State Highway System by appropriate authority," and under § 14-384(9), "[s]treet shall mean a public way for the purpose of vehicular and pedestrian travel in the city and *shall include the entire area within the right-of-way*." (Emphasis supplied.)

Under Neb. Rev. Stat. § 39-1309(3) (Reissue 2016), "highways" that are not part of the state highway system are part of the "county road system," with title "to the right-of-way *of such roads*" vesting with the county:

> Any highways not designated as a part of the state highway system as provided by sections 39-1301 to 39-1362 and 39-1393 shall be a part of the county road system, and the title to *the right-of-way of such roads* shall vest in the counties in which the roads are located.

(Emphasis supplied.)

The statutes pertaining to the county road system do not otherwise elaborate on county rights-of-way. Pertaining to the state highway system, however, Neb. Rev. Stat. § 39-1359 (Reissue 2016) describes rights-of-way acquired by the Department of Transportation as "inviolate for state highway and departmental purposes" and, with limited statutory exceptions or unless with written consent of the Department of Transportation, prohibits any "physical or functional encroachments, structures, or uses" within the right-of-way limits. Neb. Rev. Stat. § 39-1360 (Reissue 2016) provides that "[n]o person may use the drainage facilities of a highway for private purposes without first obtaining the written consent of the [Department of Transportation]."

[12] All these provisions in chapter 39 illustrate that a "road" includes the right-of-way, which cannot be obstructed

without express permission. Consistent with § 39-1302(32) and numerous other statutes in chapter 39, we hold that a "public road" in § 39-301 includes the entire area within the county's right-of-way. The object sought to be accomplished by § 39-301 is the maintenance for the public safety of the "road," the boundaries of which are designated by the county through its acquisition of the right-of-way. Thus, the area of the ditch here at issue, which was within the county's right-of-way, was part of the "public road" for purposes of § 39-301.

### Did Thelen Erect the Fences?

Having determined that the area in question was a "public road," we address Thelen's contention that there was insufficient evidence for the trier of fact to conclude that he was responsible for erecting the fences obstructing the public road. In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.[15] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.[16] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[17] When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court.[18]

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial,

---

[15] *State v. McCave, supra* note 1.

[16] *Id.*

[17] *Id.*

[18] *Id.*

or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[19] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[20]

The evidence was sufficient to support the county court's finding that Thelen erected the fences or left them lying in the ditch right-of-way. The right-of-way in question adjoined Thelen's land, and Thelen repeatedly described that he used a fence there for his cattle. At least twice, Thelen expressly sought permission to erect a fence on the land in question. He was convicted of violating § 39-301 for erecting a fence on the same land the year prior to the violations at issue in this appeal. He indicated to Schmidt that he intended to keep erecting a fence there. Thelen asked for the return of fencing materials confiscated from the ditch right-of-way by law enforcement.

This evidence might be considered circumstantial evidence, which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists.[21] As Thelen points out, there is no evidence that anyone observed Thelen erect the fence, nor is there a clear direct admission by Thelen. But a fact proved by circumstantial evidence is nonetheless a proven fact.[22] Circumstantial evidence is not inherently less probative than direct evidence.[23] We find the evidence sufficient to support the convictions in the criminal case of three counts of violating § 39-301.

---

[19] *State v. McCurdy, supra* note 6.

[20] *Id.*

[21] See *State v. Mowry*, 245 Neb. 213, 512 N.W.2d 140 (1994).

[22] *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

[23] *Id.*

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court affirming the judgment and convictions of the county court.

Affirmed.