IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MACKINS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DEWAYNE M. MACKINS, APPELLANT.

Filed May 4, 2021.    No. A-20-566.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Dewayne M. Mackins was convicted by a jury of attempted robbery and was sentenced to 15 to 20 years' incarceration in the district court for Sarpy County. Mackins challenges the sufficiency of the evidence to support his conviction and the denial of his motion for a directed verdict. He also claims his sentence is excessive. We affirm.

## BACKGROUND

According to testimony adduced at trial, Maria Alvarez de Gomez' husband owned a mechanic shop, and both she and her son, Beto, worked there. On the morning of June 12, 2019, Maria was sitting on a sofa in the mechanic shop, and Beto was sitting behind the store's counter. Beto testified that he noticed a masked man, later identified as Mackins, with only his eyes visible

due to a face covering he was wearing, enter the room. When Beto turned to look at him, Mackins demanded money from the shop's cash register.

At the time Mackins demanded the money, Beto believed him to have a gun based upon the way his hand was fisted underneath his shirt. Maria testified that she also saw Mackins holding an object under his jacket that she believed to be in the shape of a gun. In response to Mackins' demand, Beto opened the cash register and hit the trigger for the security system. Beto told Mackins "to take the whole register and leave."

The sequence of events thereafter are somewhat confusing and conflicting. According to Maria, she asked Mackins what he was doing and claimed Mackins then pointed the gun that had been under his jacket at her face. Beto confirmed that Mackins physically pointed the gun at Maria's head. According to Beto, he then pushed Maria to the ground and began pushing Mackins "towards the exit with the cash register."

Beto testified that at one point, Mackins grabbed a $50 bill from the register, which, according to Beto was the only money in the register. A $50 bill was later found in the parking lot. Beto stated he grabbed the cash register drawer, threw it to the ground, and told Maria "to run to the bathroom," which he did "to protect her." Maria testified that she yelled at Juan Daron Martinez, one of the shop's employees, "They're trying to rob us." Maria saw Mackins enter into a struggle with Beto and Martinez; Mackins' facial covering slipped off, and Maria saw his face.

Maria testified that she then ran to the bathroom and while in the bathroom, heard a shot. Martinez testified he also had heard a noise that he thought was a gun shot. While in the bathroom, Maria called the police but was unable to communicate with them effectively, so she called her husband, who called the police.

Martinez testified that while Maria was in the bathroom, Mackins pointed the gun at him and Martinez punched him. According to Martinez, Mackins tried to run, but Martinez grabbed him by the hair in the parking lot. During the incident, the gun fell out of Mackins' hand and broke into multiple pieces.

While in the parking lot, Beto struck Mackins with a rod, "at least a dozen times," causing him to fall to the ground. Martinez proceeded to drag Mackins by his hair to the garage door while he was face down and Beto continued to hit him because "[h]e was trying to fight [them] back." Beto admitted that he saw Martinez hit Mackins' head into the ground, saw, Mackins' forehead and mouth bleeding and blood on the cement, and heard Mackins say, "Gomez, let me go," even though Beto claimed they had never met. Martinez removed Mackins' mask, and both Martinez and Beto saw his face. Beto then called the police.

When Officer Sean Jimerson arrived on the scene, he observed Beto, Martinez, and Mackins "wrestling" in the parking lot of the business, with Beto and Martinez holding Mackins down. Jimerson placed Mackins in handcuffs and saw "what appeared to be a black handgun" on the ground nearby. The gun turned out to be a BB gun, and no fingerprint testing was run on it. Mackins told Jimerson he was an informant and asked him to "call the feds," which Jimerson did not do. Jimerson testified Mackins did not have any money on his person when Jimerson arrived on the scene. The second officer on the scene photographed the area and found two $50 bills, the broken BB gun, a t-shirt with blood on it, and braids of hair on the ground. No surveillance video exists of the incident.

At the close of the State's evidence presented at trial, Mackins made a motion for directed verdict, claiming the evidence presented did not meet the prima facie elements to support a robbery conviction. The court denied the motion, finding that the State had met its burden. After a 3-day trial, the jury found Mackins guilty of attempted robbery, a Class IIA felony. Neb. Rev. Stat. §§ 28-201 and 28-324 (Reissue 2016). After reviewing the presentence investigation report (PSR), the district court sentenced Mackins to a term of incarceration of not less than 15 years nor more than 20 years, with credit for 420 days' time served. Mackins timely appeals.

## ASSIGNMENTS OF ERROR

Restated, Mackins assigns that the district court (1) erred by denying Mackins' motion for directed verdict and the evidence was insufficient to support the verdict and (2) abused its discretion by imposing an excessive sentence.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017). A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Id.*

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020).

An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Motion for Directed Verdict and Sufficiency of Evidence.*

Mackins argues the district court improperly denied his motion for directed verdict because the State failed to present a prima facie case that a robbery or attempted robbery occurred. He further claims the evidence was insufficient to support his conviction. We reject both arguments.

In Nebraska, it has been held that a trial court will be justified in directing a verdict of not guilty only where there is a total failure of competent proof to support a material allegation in the information, or where the testimony is of so weak or doubtful a character that a conviction based thereon could not be sustained. *State v. Dwyer*, 226 Neb. 340, 411 N.W.2d 341 (1987). When we consider a criminal defendant's motion for directed verdict, the State is entitled to have all of its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence. *State v. Williams, supra.* If there is

any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

Mackins asserts the State failed to prove the prima facie elements of both robbery and attempted robbery. A person commits the crime of robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever. § 28-324. A person shall be guilty of an attempt to commit a crime if he intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime. § 28-201.

At trial, the State presented evidence through eyewitness testimony that Mackins entered the shop with a gun under his jacket with his face covered and only his eyes showing, demanded the money from the shop's cash register, pointed the gun at Beto and Martinez, and held the gun to Maria's head. The State also presented evidence that Mackins grabbed a $50 bill out of the register, and a $50 bill was found in the parking lot outside the shop after the struggle between Mackins, Beto, and Martinez. Beto testified that there had been one $50 bill in the shop's cash register that morning. The State presented evidence that when police arrived, the register no longer contained a $50 bill. The alleged face covering with two holes in it was found in the parking lot as well. Beto testified that exhibit 2 was the mask Mackins was wearing upon entering the shop.

All of this evidence combined satisfies the requirements of the prima facie elements of robbery as outlined in § 28-324 so that a reasonable factfinder could have found Mackins guilty of robbery. Therefore, it follows that a reasonable jury could have found Mackins guilty of the lesser charge of attempted robbery, as outlined by §§ 28-324 and 28-201. Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the crime of both robbery and attempted robbery beyond a reasonable doubt.

Mackins' argument on appeal focuses on the testimony of the witnesses at trial, alleging they were not credible and were untruthful. As an appellate court, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. *State v. Thelen*, 305 Neb. 334, 940 N.W.2d 259 (2020). Mackins had the opportunity to cross-examine each of the witnesses and to present their inconsistencies to the jury. The jury also heard Jimerson's testimony that no fingerprint analysis was done on any objects found at the scene, that Mackins had claimed he was an informant, and that Mackins knew Beto's last name even though Beto claimed they had never met. The jurors had the opportunity to weigh that evidence and any discrepancies in testimony during deliberation. We do not reweigh this evidence on appeal.

Therefore, we affirm the district court's denial of Mackins' motion for directed verdict and conclude that the evidence was sufficient to support a conviction for attempted robbery.

*Excessive Sentence.*

Mackins' second assignment of error is that his sentence was excessive. He asserts that the district court abused its discretion by giving his criminal history substantial weight and by failing to give proper weight to the finding that he was in the precontemplative stage of change according to the Level of Service/Case Management Inventory (LS/CMI).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering

and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Mackins was convicted of attempted robbery, a Class IIA felony. §§ 28-201 and 28-324. The sentencing statute in effect subjected Mackins to a maximum sentence of 20 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). He was sentenced to not less than 15 nor more than 20 years' imprisonment with credit for 420 days' time served.

The PSR contained the LS/CMI's findings. The LS/CMI indicated that Mackins' education/employment and companions put him at very high risk for recidivism. Mackins reported completing the 11th grade and leaving school due to lack of motivation and a lack of a father. He also claimed he was suspended after starting a fight with another student, was transferred to an alternative school, and did not attend due to lack of transportation. Mackins claimed to have completed three of his GED exams. Regarding his employment, Mackins reported having multiple jobs during his life, but none of them lasted longer than 10 months. In terms of his companions, Mackins reports having two friends, one of which has a criminal history of drug charges and driving under the influence, among others. Mackins also reported that his last name is associated with a street gang, though he claims to not be a gang member.

Mackins' criminal history, family/marital status, leisure/recreation, alcohol/drug problem, and anti-social pattern all put him at a high risk of recidivism. The LS/CMI contained Mackins' lengthy criminal history, many of which were traffic infractions. However, Mackins' history contained two convictions for driving under the influence, one for assault and battery, possession of marijuana, failure to appear, two for shoplifting, three for robbery, and one juvenile conviction for third degree assault and possession of marijuana.

Additionally, the Substance Abuse Questionnaire indicated that Mackins lies in the maximum risk range for alcohol, drugs, violence, antisocial behavior, and aggressiveness, as well as in the problem risk range for his stress coping abilities.

The sentence imposed was within the statutory limits, and at sentencing, the court stated that it considered the contents of the PSR and each of the required factors under *State v. Williams, supra*. The court found Mackins to be an unsuitable candidate for probation and that imposing a lesser sentence would depreciate the seriousness of his crime and would promote disrespect for the law.

Mackins appears to argue that his previously-dismissed robbery charges from 2008, 2011, and 2012 in Douglas County were the sole basis of the court's sentence. It is a long-established precedent in Nebraska that a defendant's criminal history, including "arrests [that] did not lead to a conviction of crime . . . are no less proper to be considered in arriving at the sentence to be imposed." *State v. Rose*, 183 Neb. 809, 812, 164 N.W.2d 646, 649 (1969). As such, the court's use

of Mackins' prior dismissed charges did not constitute an abuse of discretion. Regardless, there is no indication this was the sole basis for the court's imposed sentence.

Therefore, because the court's sentence was within the statutory limit and because it reviewed all the required factors for sentencing, we find the court did not abuse its discretion.

CONCLUSION

For the aforementioned reasons, we affirm Mackins' conviction and sentence.

AFFIRMED.