Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/03/2023 09:08 AM CDT

State of Nebraska, appellee, v.
Shawna J. Fernando, appellant.

___ N.W.2d ___

Filed September 26, 2023.    No. A-22-896.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Criminal Law: Minors: Intent.** There is no requirement under Nebraska law that the defendant be physically present when the child abuse occurs, or that the defendant be the only person present, so long as he or she knowingly, intentionally, or negligently permits the child abuse.

3. **Criminal Law: Intent: Words and Phrases.** In the context of a criminal statute, that which is done willfully or purposefully rather than accidentally or involuntarily is done intentionally; being a state of mind, the intent operative at the time of an action may be inferred from the words and acts of an accused and from the facts and circumstances surrounding the conduct.

4. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

Appeal from the District Court for Douglas County: Todd O. Engleman, Judge. Affirmed as modified.

James K. McGough, of McGoughLaw, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

Pirtle, Chief Judge, and Moore and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

This is Shawna J. Fernando's direct appeal from her convictions of two counts of intentional child abuse and one count of accessory to first degree sexual assault of a child following a bench trial in Douglas County District Court. On appeal, Fernando assigns that the evidence was insufficient to convict her of the crimes charged. Following our review, we affirm Fernando's convictions. However, because the district court committed plain error in sentencing Fernando to a term of postrelease supervision, we modify the sentencing order.

## BACKGROUND

Fernando is the mother of the victim, who was born in 2006. Fernando had six other children and was married to Pedro Fernando Flores, although at the time of trial, she was in the process of divorcing him; Flores was born in 1989. Prior to March 2021, Fernando stayed home with her children while Flores worked and provided financial support to the family. Flores was not the victim's biological father, but he came into her life when she was very young and she called him "'Dad.'"

The victim was 15 years old at the time she testified at trial. According to the victim, when she was in fifth grade and 11 years old, Flores entered her bedroom while she was sleeping and put his penis in her vagina. The next day, the victim told Fernando that Flores "had sex" with her, and Fernando left the room to speak with Flores. The victim could not

understand what the two were saying, although it sounded as though they were yelling.

After the victim told Fernando what had happened, Flores continued to live with the victim and continued to sexually penetrate her. When the victim was in sixth grade, the family moved to another apartment, and Flores continued to assault the victim in the same manner; the victim did not tell her mother that Flores was continuing to do so. At some point later in her sixth grade year, when the victim was 12 years old, she and her family moved into a house in Omaha, Nebraska, where Flores continued the sexual assaults. By this time, the victim had begun menstruating, although she could not remember exactly how old she was when it first occurred.

The victim testified that when she was in sixth grade, toward the end of the school year, Fernando asked her if she had gotten her period that month and she told her she had not. Shortly thereafter, Fernando had the victim do a home pregnancy test, which was positive. Fernando inquired who the father was, and the victim told her that it was Flores. Fernando called Flores on the phone, he came home, and Fernando and Flores spoke on the back porch of the home, but the victim did not remember what was said.

A couple of days later, Fernando called an abortion clinic and handed the phone to the victim, who made an appointment. Fernando, along with her sister, took the victim to the abortion clinic and instructed the victim to say that the father of her unborn child was "a boy from school." At the clinic, the victim filled out the necessary paperwork herself, as required by staff, despite not understanding all the questions or words on the form. Fernando signed a release of liability form at the clinic, as well as a notarized parental consent form.

According to the victim, she took a pill at the clinic and was given a prescription for another pill to take the next day. The next day was a Sunday, and Fernando and the rest of the family went to church while she was left home alone to take the remainder of the medication. The abortion caused

her to have painful cramps. When the family returned home, Fernando checked on her but left the house again, and Flores comforted her and gave her some pain medication.

After the abortion, Flores continued to reside with the family and continued to sexually penetrate the victim. At Fernando's suggestion, the victim began using birth control pills. At some point, Fernando had the victim take a second pregnancy test because her period was late, but the results were negative. At that time, the victim again told Fernando what Flores was doing to her. After the second pregnancy test, Flores continued to reside with the victim and sexually assault her.

Contrary to the victim's trial testimony that she told Fernando on three different occasions what Flores was doing, defense counsel impeached her several times with her prior statements in which she claimed to have told her mother on only two occasions. This included statements made during her child advocacy center interview, trial testimony during a juvenile court proceeding, deposition testimony in a criminal proceeding against Flores, and deposition testimony in the current case.

The victim testified that prior to the abortion, she would track her period using an application on her phone. She would tell Fernando when she needed feminine hygiene products. Fernando would also track the victim's periods and would ask the victim about them.

In January 2021, the victim told a friend what had been happening, and this led to the police coming to the family's home. This was close in time to the last instance of sexual penetration. When the police first arrived, Fernando retrieved the victim from her room, told her why the police were there, and instructed the victim to tell the police it was not true.

According to the investigating officers, the victim was nervous to speak with them because Fernando and Flores were present. At the suggestion of one of the officers, the victim spoke privately with an officer in his cruiser. When they returned to the house, Fernando did not attempt to comfort the

victim despite her being obviously distressed. It was agreed that Flores would leave the home and spend the night elsewhere. When Flores left, Fernando hugged him.

The victim was to go to a child advocacy center the next day, and according to the victim, Fernando told her to say that "it was all a lie" and that if she did not say it was a lie, the children would go into foster care. The next day, Fernando and her sister took the victim to the child advocacy center for an interview.

According to an investigator assigned to the case, Fernando was also interviewed that day. After Fernando was taken into custody and her phone was confiscated, Flores attempted to call Fernando's phone. The investigator asked Fernando if she would be willing to call or text Flores to determine his whereabouts, but she declined. Pursuant to a search warrant for the phone's content, investigators discovered period trackers on her phone, as well as an attempt by Fernando to call Flores shortly after the police had left the residence the previous night.

Fernando testified that she tracked the victim's period because she needed to know when to buy hygiene products, because the victim would have "accidents" when she first started menstruating. Fernando explained that the family had a tight budget and that she needed to make sure to have money for the items. She said she had asked the victim to keep track of her own periods, but the victim would sometimes forget.

Fernando stated that when she discovered the victim was pregnant, the victim would not tell her who the father was. Fernando claimed she asked the victim over the course of the week about it, and eventually asked if it was a certain boy from the church they attended, and the victim said that it was. Fernando said it was the victim's decision to have an abortion. She also testified that the abortion clinic recommended that the victim start birth control because it would be good

for her hormones; that is why the victim was started on birth control after the abortion.

Fernando claimed the first time she was aware of the allegations of sexual assault by Flores was when the police came to the home on January 31, 2021. She stated that sometime after Thanksgiving 2020, the victim told her that Flores had "smacked [the victim's] butt" and the victim felt it was inappropriate. Fernando claimed she spoke with Flores, who denied it. She stated that shortly thereafter, she convinced Flores to go to Mexico to visit family, which he did, and he returned a week or so before police came to the home.

Fernando admitted that she knew the family of the boy she claimed the victim said was the father of her unborn child, but that she did not speak with the family. According to Fernando, "[the victim] just didn't want everyone to know, it was [the victim's] business. It was her [sic] for her to tell." Fernando said she told the victim she would not tell anyone it was the boy's unborn child and that the victim expressed "[a] little bit" of concern about Fernando's contacting the boy's family.

Following the review of written closing arguments, the district court found the victim to be "very credible," and Fernando to be less so. It found Fernando guilty of two counts of intentional child abuse, each a Class IIIA felony, and one count of accessory to a felony, a Class IIA felony. For each conviction of intentional child abuse, Fernando received a sentence of 2 to 3 years' imprisonment, with 12 months' post-release supervision. For her conviction of accessory to first degree sexual assault of a child, she received a sentence of 10 to 14 years' imprisonment. The sentences were ordered to be served concurrently, and Fernando was given credit for 2 days' time served. Fernando appeals.

## ASSIGNMENTS OF ERROR

Fernando assigns that there was insufficient evidence to convict her of intentional child abuse when there was no

evidence that she intentionally placed the victim in a situation to be sexually abused. She also assigns that there was insufficient evidence to support the conviction of accessory to first degree sexual assault of a child, because there was no evidence to determine the father of the unborn child and the evidence demonstrated that the victim decided to proceed with the abortion.

## STANDARD OF REVIEW

[1] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Thelen*, 305 Neb. 334, 940 N.W.2d 259 (2020). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

## ANALYSIS

*Intentional Child Abuse.*

Fernando was charged with two counts of intentional child abuse. To be found guilty, the State was required to prove that Fernando knowingly and intentionally caused or permitted the victim to be placed in a situation that endangered her life or physical or mental health or to be placed in a situation to be sexually abused as defined in Neb. Rev. Stat. § 28-319, § 28-319.01, or § 28-320.01 (Reissue 2016). See Neb. Rev. Stat. § 28-707 (Cum. Supp. 2022). Section 28-319.01 provides that a person commits first degree sexual assault of a child if a person at least 19 years of age subjects a person under 12 years of age to sexual penetration, or if a person 25 years of age or older subjects a person at least 12 years of age, but less than 16 years of age, to sexual penetration.

Here, the State presented evidence from which a rational trier of fact could conclude that Fernando knew that the victim was being sexually assaulted by Flores and permitted the victim to be placed in that situation. The victim testified that when she was 11 years old, Flores subjected her to sexual penetration, and that he continued to do this when she was age 12 and older. Flores was always over the age of 25 when the assaults occurred. The victim told Fernando about Flores' actions after the first assault, when she became pregnant, and after she took a second pregnancy test; however, Fernando did nothing, thereby permitting the victim to be placed in a situation in which the sexual assaults continued for years.

Fernando paraphrases § 28-707(e) as follows: "A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be placed in a situation to be sexually abused." Brief for appellant at 13 (emphasis omitted). She argues that viewing the evidence in the light most favorable to the State, the evidence showed that she disregarded a substantial and unjustifiable risk by not removing the victim or her husband from the home. She asserts that this shows she acted recklessly with respect to the potential harm against the victim, which "is the very definition of *negligent* child abuse described in § 28-707(9)." Brief for appellant at 14 (emphasis in original). She concludes that inaction may constitute negligence or recklessness but does not constitute an intentional act because "[i]naction is not an overt, intentional act that places someone in a dangerous position they otherwise would not have found themselves in." *Id*.

We find Fernando's rationale flawed. If her inaction can be the basis for a finding of negligent child abuse, as she admits it can, it necessarily follows that it can be a basis for a finding of intentional child abuse. Action, or lack thereof, is not what differentiates intentional child abuse from negligent child abuse. The proscribed conduct for each offense is exactly the same; it is the actor's state of mind which differentiates the offenses. *State v. Blair*, 272 Neb. 951, 726

N.W.2d 185 (2007). If the abuse is committed knowingly and intentionally, it is a felony; if committed negligently, it is a misdemeanor. *Id*.

[2] Section 28-707 applies to persons who either "cause" or "permit" a minor child to be placed in a situation to be sexually abused. By its very nature, the statute governs both action and inaction. No overt act is required when one permits a child to be placed in a situation to be sexually abused; rather, one can permit it to happen by failing to take action to prevent it. As explained by the New Mexico Supreme Court, "'causing' and 'permitting' child abuse are distinct theories, one premised upon active abuse (causing), the other upon 'the passive act of allowing the abuse to occur' (permitting)." *State v. Nichols*, 2016 NMSC 001, ¶ 32, 363 P.3d 1187, 1192 (2015). As it relates to child abuse, the Nebraska Supreme Court has stated:

> [U]nder Nebraska law, one can commit child abuse if he or she "knowingly, intentionally, or negligently causes *or permits* a minor child" to be abused in one of the ways prohibited under § 28-707(1). (Emphasis supplied.) There is no requirement under Nebraska law that the defendant be physically present when the child abuse occurs, or that the defendant be the only person present, so long as he or she knowingly, intentionally, or negligently permits the child abuse.

*State v. Olbricht*, 294 Neb. 974, 984, 885 N.W.2d 699, 707 (2016) (emphasis in original).

[3] Based upon the evidence presented, a rational trier of fact could find that Fernando was made aware of Flores' actions on three occasions, yet she permitted the victim to be placed in a situation to be continually sexually assaulted.

> In the context of a criminal statute, that which is done willfully or purposefully rather than accidentally or involuntarily is done intentionally; being a state of mind, the intent operative at the time of an action may be

inferred from the words and acts of an accused and from the facts and circumstances surrounding the conduct.

*State v. Meyer*, 236 Neb. 253, 255, 460 N.W.2d 656, 658 (1990).

Fernando made an intentional decision to keep the victim and her assailant under the same roof. There was nothing accidental or involuntary involved. The district court did not err in finding Fernando guilty of intentional child abuse, and we reject her argument to the contrary.

### Accessory to First Degree Sexual Assault of Child.

Fernando argues that there was insufficient evidence to support the conviction of accessory to first degree sexual assault of a child and that there was no evidence to determine the father of the unborn child. To convict Fernando of the charge, the State was required to prove that Fernando, with intent to interfere with, hinder, delay, or prevent the discovery, apprehension, prosecution, conviction, or punishment of another person for the offense of first degree sexual assault of a child, did harbor or conceal a felon, or provide or aid in avoiding the discovery or apprehension of the felon, or conceal or destroy evidence of the crime, tamper with a witness, informant, document or other source of information, regardless of its admissibility into evidence. See Neb. Rev. Stat. § 28-204 (Reissue 2016).

Here, there was evidence that Fernando, upon learning that her 12-year-old daughter was pregnant by Flores, had the victim undergo an abortion and told the victim to tell people that the father of the unborn child was a boy from school. After the police were made aware of the abuse, Fernando told the victim to tell the police and interviewers at the child advocacy center that "it was all a lie." It can be inferred from the circumstances surrounding the situation that Fernando's actions were taken with the intent to prevent the discovery of the crime and the prosecution of Flores. This was sufficient for the district court to find Fernando guilty of accessory to first degree sexual assault of a child.

Fernando argues the victim made the decision to terminate the pregnancy, that the clinic ultimately and independently administered and prescribed the medication, and that when coupled with the lack of any evidence to prove that Flores was the father and that Fernando took any action knowing that fact, there was insufficient evidence to support the accessory conviction. We disagree.

The victim testified she told Fernando that Flores was the father of her unborn child and that it was Fernando's idea for the victim to get an abortion. The victim testified that Fernando told her to tell other people that the father of her unborn child was a boy from her school. Years later, Fernando told the victim to tell police and the staff at the child advocacy center that "it was all a lie." Although Fernando claimed at trial that the victim told her the father was a boy from church, Fernando did not attempt to contact the boy's family or take any action to follow up on her belief that her 12-year-old daughter was pregnant by another child. The district court specifically stated that it found Fernando to be less credible than the victim. We do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. See *State v. Thelen*, 305 Neb. 334, 940 N.W.2d 259 (2020).

The evidence was sufficient to support the conviction of accessory to first degree sexual assault of a child. This assignment of error fails.

*Plain Error in Sentencing.*

[4] The State directs our attention to a matter of potential plain error in the imposition of Fernando's sentences. Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020).

Fernando was convicted of two Class IIIA felonies. A Class IIIA felony is punishable by a maximum sentence of

3 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both, with no minimum sentence of imprisonment required, although if imprisonment is imposed, a minimum of 9 months' post-release supervision is required. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). However, if a person is sentenced to imprisonment for a Class IIIA felony and is sentenced concurrently or consecutively to imprisonment for a Class IIA felony, that person shall not be subject to post-release supervision. See § 28-105(6).

Fernando was sentenced for her convictions of Class IIIA felonies concurrently to her conviction of a Class IIA felony. Thus, she should not have been sentenced to a term of post-release supervision. We strike that portion of the sentencing order imposing a term of post-release supervision and the corresponding order for post-release supervision.

## CONCLUSION

We find the evidence was sufficient to support the convictions of intentional child abuse and accessory to first degree sexual assault of a child. We modify the sentencing order to strike the portion that ordered Fernando to serve a term of post-release supervision and the corresponding order for post-release supervision. We affirm the order of the district court in all other respects.

Affirmed as modified.